[Civil No. 1130.    Filed April 2, 1910.]

[108 Pac. 960.]

THE TERRITORY OF ARIZONA, at the Relation and to the Use of J. N. GATES, Tax Collector in and for the County of Cochise, in the Territory of Arizona, Plaintiff and Appellant, v. THE COPPER QUEEN CONSOLIDATED MINING COMPANY, a Corporation, Defendant and Appellee.

1. TAXATION—ASSESSMENT-ROLL—DESCRIPTION OF REAL ESTATE—MINING CLAIMS.—Civil Code of 1887, paragraph 2652, permits the assessor in preparing an assessment-roll to describe real estate by common designation or name, and provides that the description shall be sufficient if it can be readily identified thereby. *Held,* that the description of patented mining claims by name was sufficient, as the name of such a claim was a "common designation or name" within the statute, and by such name the real estate might be "readily identified."

2. SAME—ASSESSMENT—PATENTED MINES.—The practice of assessing mines by name has obtained too long in the territory to be questioned.

3. EVIDENCE—JUDICIAL NOTICE—STATUTES—EXECUTIVE CONSTRUCTION—ASSESSMENT OF TAXES.—The practice of assessing mining claims by name, followed for a long time without question, is a practical construction of Civil Code of 1887, paragraph 2652, as to the mode of assessment, of which the courts may take judicial notice.

4. TAXATION—ASSESSMENT OF REAL ESTATE.—The owner of real estate is entitled to a separate assessment in tracts or parcels, unless the right is waived by a list returned to the assessor.

5. SAME—SAME—EFFECT OF RETURNING PROPERTY EN MASSE.—By returning its property *en masse* a mining company waived its right of separate assessment of its mines, though the list returned was not verified by the oath of its superintendent.

6. SAME—ASSESSMENT—EQUALIZATION—ENTRY OF RAISE ON ORIGINAL ROLL—EFFECT OF OMISSION.—That a raise in an assessment made by a county board of equalization was never entered by the clerk on the original roll, as required by Civil Code of 1887, paragraph 2654, is a mere omission, and harmless, the raise having been first carried into the tax-books by an entry on the duplicate roll.

7. SAME—PAYMENT OF TAXES—REAL ESTATE—PARCELS SEPARATELY ASSESSED.—Civil Code of 1887, paragraph 2676 (Civ. Code 1901, par. 3900), provides that whenever any tax is paid to the collector, he shall mark the word "Paid" and the date of payment in the

duplicate roll, opposite the name of the person or description of property liable, and give a receipt specifying the amount of the assessment, the amount of tax, amount paid, date of payment, description of property assessed with sufficient certainty to identify it, and year for which the tax was assessed, but that no tax collector shall receive any taxes on real estate for any portion less than the least subdivision entered on the roll. *Held*, in view of such statute, that it was a fundamental rule in this state that a taxpayer may pay on any one of parcels separately assessed, discharging the lien, without paying on the remainder.

8. Same—Assessment—Equalization.—Under Civil Code of 1887, paragraph 2654, authorizing the county board of equalization to determine whether the assessment value of any property is too small or too great, and change and correct the same by addition or deduction, the board had no power to segregate from a tract of land assessed as one parcel a portion thereof, and impose thereon an additional assessment, without first determining that such tract was improperly assessed as a whole, and causing it to be reassessed and raised in subdivisions, so as to preserve the taxpayer's right to discharge the lien of taxes on such of the several separate tracts as he might elect.

9. Same—Enforcement of Lien—Pleading—Variance.—Where, in a proceeding to enforce a lien for taxes against a mining company's property, the complaint, which set forth a list of the mining claims assessed, differs from the list shown in the assessment-roll, the duplicate assessment-roll, the delinquent assessment-roll and the back-tax book, in that it enumerates claims omitted from such rolls and book, and includes names omitted therefrom, the variance is such as to render the rolls and book inadmissible thereunder.

10. Same—Same—Nature of Action—Personal Judgment.—A special statutory proceeding under Laws of 1903, Act No. 92, to enforce a lien for taxes, is an action *quasi in rem* to fix a lien on specific property, and no personal judgment can be had.

11. Statutes—Construction—Statute Adopted from Other State.— In case of a statute adopted from another state, the prior construction thereof by the courts of last resort of that state is controlling on the supreme court of the territory.

12. Taxation — Enforcement of Lien — Judgment Differing from Complaint—Invalidity.—Laws of 1903, Act No. 92, section 88, provides that the judgment in a proceeding under the act to enforce a lien for taxes shall describe the land on which the taxes are found due, state the amount and interest found due on each tract or lot, and the year or years for which the same are due, up to rendition thereof, and decree that the lien be enforced, and the real estate, or so much thereof as necessary, be sold, and that execution shall issue thereon, to be executed as in other cases of judgment and execution, and that the judgment shall be a first lien on the

land. *Held,* in view of this statute, that a judgment in an action to collect back taxes, differing from the complaint in describing the property sought to be subjected to the lien, was void.

13. Appeal and Error—Harmless Error—Admission of Evidence.— In a proceeding to enforce a lien for taxes, wherein the amount in suit was a tax on the raise in defendant's assessment, the admission of assessment-rolls and a tax-book, differing from the complaint in the description of the property, was not rendered harmless by proof that an amount equivalent to the tax on the property as originally assessed was tendered by defendant in full payment, for the purpose of bringing suit to enjoin collection, and subsequently paid in course of suit, and credited on the entire tax claimed to be due.

14. Taxation—Enforcement of Lien — Pleading—Variance.—Where, in a proceeding to enforce a lien against a mining company's property, wherein the amount in suit was a tax on a raise in its assessment, the complaint alleged a raise of sixty-five claims *en bloc,* proof of a raise on eight thereof, on which alone it was sought to foreclose the lien, was a substantial variance.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for Cochise County. Fletcher M. Doan, Judge. Affirmed.

This is a special statutory proceeding, brought under Act No. 92 of the Laws of 1903 of the territory of Arizona to enforce a lien for territorial and county taxes for the year 1901 upon the property described in the complaint, amounting, with interest and costs, to the sum of $120,039.35, on the eighth day of June, 1904, together with interest thereon at the rate of ten per cent per annum until paid, and the further sum of four per cent of the amount found due as the tax collector's fee, and the further sum of twenty-five per cent upon the amount found due as the tax attorney's fee. The case was tried in the lower court without a jury. Judgment was entered in favor of the defendant and appellee, that the plaintiff and appellant take nothing by its action, and that the defendant and appellee recover its costs, from which judgment the appellant has prosecuted this appeal. A motion for new trial, made on the usual statutory grounds, was denied. Notice of appeal from the judgment and order denying new trial was given, and thereupon this appeal was perfected.

The facts disclosed by the evidence are substantially as follows:

During the time provided by law for the assessment of property for territorial and county taxes in the year 1901, the appellee listed and returned to the assessor of Cochise county for assessment certain patented claims belonging to the appellee, namely, Atlanta, Ace of Spades, Amazon, Baxter, Best Piece, Copper Queen, Copper Jack, Copper King, Copper Prince, Copper Bullion, Cumberland, Cave (Dividend-Wedge-Ellie-Coon), East Side, Frank Cogswell, General, Golden Gate, Goddard, Gardner, Hendricks, Hayes, Holbrook, Howell, Harrison, Iron Monster, Little New York, Little Joker, Lookout, Mammoth, Malvina, New York, Neptune, North Star, Ophir, Rucker, Sun Rise, Space, Surprise, Silver Spray, Silver Bear, Sunrise, Sunny Side, Sacramento, Tip Top, Triangle, Uncle Sam, Wade Hampton, Wood Chopper, White Tail Deer, Bisbee, Bell Isle, Columbia, Copper Monarch, Copper Crown, Copper Globe, Cuprite, Hardscrabble, Keystone, Lucky Jack, Raymond, Stars and Stripes, South View, Tack, Union, and Virginia. The tax list so returned appeared upon its face to be verified by the oath of the superintendent of the mining company, but was in fact not so verified.

The assessment as entered and shown upon the original assessment-roll is as follows:

| NAME OF TAXPAYER. | LANDS AND CITY AND TOWN PROPERTY | | Value of Lands and Town Property. | Value of Improvements. |
| | DESCRIPTION OF | Number of Acres. | | |
| --- | --- | --- | --- | --- |
| Copper Queen Consolidated Mining Co. | —Bisbee— 65 Patented Mining Claims. Atlanta, Ace of Spades, Amazon, Baxter, Best Piece, Copper Queen, Copper Jack, Copper King, Copper Prince, Copper Bullion, Cumberland, Cave, Dividend, Wedge, Ella Coon, East Side, Frank Cogswell, General, Golden Gate, Goddard, Gardner, Hendricks, Hayes, Hollbrook, Powell, Harrison, Iron Monster, Little New York, Little Joker, Lookout, Mammoth, Malvina, New York, Neptune, North Star, Ophir, Rucker, Sunrise, Space, Surprise, Silver Spray, Silver Bear, Sun Rise, Sunny Side, Sacramento, Tip Top, Triangle, Uncle Sam, Wade Hampton, Wood Chopper, White Tail Deer, Bisbee, Belle Isle, Columbia, Copper Monarch, Copper Crown, Copper Globe, Cuprite, Hardscrabble, Keystone, Lucky Jack, Raymond, Stars and Stripes, South View, Tack, Union, Virginia ..................... | 636 | 3,180.00 | 55,431.00 |

A portion of the claims so included are in no sense contiguous.

At a meeting of the county board of equalization, on July 17, 1901, the assessed valuation of the property of appellee was equalized by an increase on the mining claims named:

| | |
|---|---:|
| Silver Spray mine........................... | $1,000,000 00 |
| Holbrook mine ............................. | 1,000,000 00 |
| Hoist and improvements thereon.............. | 10,000 00 |
| Copper Queen mine.......................... | 50,000 00 |
| Copper Jack .............................. | ·50,000 00 |
| Baxter mine .............................. | 250,000 00 |
| Atlanta mine ............................. | 250,000 00 |
| Dividend mine ............................ | 350,000 00 |
| Rucker mine .............................. | 200,000 00 |

Making a total of...................$3,160,000 00

In addition the personal property, machinery, merchandise, etc., was increased in the sum of $358,895, making a total raise of $3,464,895. Thereafter the rate of taxation for county and territorial purposes was duly fixed and levied upon all of the taxable property in Cochise county at $3.20 upon each $100 of valuation. The tax so levied upon the property of the appellee as raised amounted to the sum of $122,657.09. Upon this increase being made, the appellee filed an injunction suit in the district court of Cochise county, prior to September, 1901, to enjoin the collection of the tax upon the ground that said increase had been fraudulently made, and that it was an overvaluation of its property. It therein tendered the full sum of $14,133.12, being the amount of the tax upon all of its property, real and personal, upon the assessment for said year prior to the increase made by the board of equalization. The district court granted an injunction against the collection of that portion of the tax here in controversy upon the payment of the sum tendered by the plaintiff of $14,133.12, and also the additional sum of $9,589.20, subsequently paid, which was the amount of the tax upon the increase made upon certain personal property herein, which increase the court found to be valid. The court in said suit found as one of its findings of fact that the increase of the board of equalization upon the mining claims was not based upon any information or evidence had or obtained by them,

but was made arbitrarily and capriciously, and for the purpose of imposing upon the plaintiff an unjust share of the burden of taxation. The sum of $14,133.12 so paid by the plaintiff to the county for the tax levied upon the original assessment, which the appellee had admitted was due, and tendered in its injunction suit, was accepted by the county treasurer and *ex-officio* tax collector "on account of any moneys which might ultimately be determined as due from said company for its tax for said year." An appeal was taken by the county from this decree to this court. The opinion reversing the decree of the district court is reported under the name of the *County of Cochise* v. *Copper Queen Consolidated Min. Co.,* 8 Ariz. 221, 71 Pac. 946 (opinion on rehearing, 8 Ariz. 459, 76 Pac. 595). This court there held that the only remedy against excessive taxation at that time, as the cause of action accrued before the Revised Statutes of 1901 became operative, was that afforded under the jurisdiction of a court of equity, but reversed the decree, and remanded the case for new trial, on the ground that the complaint was defective in not expressly averring that the property was assessed in excess of its full cash value.

Subsequent to the rendition of this decision an effort was made to compromise the claim of the county, and an agreement of compromise was made under resolution of the board of supervisors adopted July 7, 1904, whereby the Copper Queen Company agreed to pay, and did pay, the further sum of $5,661.44 in full settlement of the taxes for the year 1901. Thereupon the injunction suit was dismissed by the appellee. This $5,661.44 so paid has been retained by the county. Subsequently a proceeding in *mandamus* was instituted (*Territory ex rel. Clark, Attorney General,* v. *Paines, Tax Collector,* 93 Pac. 281) to compel the tax collector to commence suit against the Copper Queen Company for the collection of the balance of the tax remaining unpaid, upon the ground that the compromise so made was unauthorized and void. This court held that the board of supervisors had no authority to compromise said tax, and granted the writ. This action was instituted pursuant to the mandate.

There is testimony offered tending to show that the raise made by the county board of equalization was not based upon any evidence of the value of the claims so raised, and was in

fact arbitrary. The appellee also offered evidence which was uncontradicted that certain of the mines which were thus raised were assessed far in excess of their full cash value. Inasmuch as it has not been necessary to consider the question of the admissibility of this evidence under the defense interposed by the appellee, it is not necessary to further state the evidence bearing thereon.

W. G. Gilmore, Pickett, Bowman & Pickett and E. S. Clark, for Appellant.

A taxpayer is generally held to be estopped from claiming that an assessment is void or defective when it appears that the assessment was based upon a statement or return made by him to the assessor, and when in completing the assessment-roll, the assessor uses the description given him by the taxpayer, a tax based upon such an assessment is valid and enforceable, and the taxpayer cannot be heard to complain that such description is insufficient or defective. *Lake County* v. *Sulphur Bank Quicksilver Co.,* 68 Cal. 14, 8 Pac. 593; *Iowa Central R. Co.* v. *People,* 156 Ill. 373, 40 N. E. 954; *Cairo etc. R. Co.* v. *Mathews,* 152 Ill. 153, 38 N. E. 623; *Pingree* v. *Berkshire Co.,* 102 Mass. 76; *Hubbard* v. *Winsor,* 15 Mich. 146; *Scollard* v. *Dallas,* 16 Tex. Civ. App. 620, 42 S. W. 640; *San Francisco* v. *Flood,* 64 Cal. 504, 2 Pac. 264; *Grace* v. *Bonham,* 26 Tex. Civ. App. 161, 53 S. W. 158; *Cooper Grocery Co.* v. *Waco,* 30 Tex. Civ. App. 623, 71 S. W. 619; *Scollard* v. *City of Dallas,* 16 Tex. Civ. App. 620, 42 S. W. 640; Black on Tax Titles, p. 143. "This case will be much stronger where it appears that the taxpayer is trying to evade just taxation by the assertion of defects which he has clearly made." *Indianapolis R. Co.* v. *People,* 130 Ill. 62, 22 N. E. 854. Although the law may require that the property be assessed in separate parcels, still an owner cannot complain that an assessment and levy are void because the property is not so assessed, where it appears that he has returned his real estate in one parcel and thereby has led the assessors to assess the same in bulk. *Albany Brewing Co.* v. *Meriden,* 48 Conn. 244; *Kissimee City* v. *Drought,* 26 Fla. 1, 23 Am. St. Rep. 546, 7 South. 525; *Dallas Title Co.* v. *Oak Cliffe,* 8 Tex. Civ. App. 217, 27 S. W. 1036; *Warwick etc. Water Co.* v. *Carr,* 24 R. I. 226, 52

Atl. 1030; *San Antonio* v. *Raley* (Tex. Civ. App.), 32 S. W. 180.

"Where the lots are assessed according to the description and grouping in the owner's inventory furnished the assessor as required by law, although such assessment was irregular because several lots were assessed together, the owner cannot question its regularity." *Dallas Title & Trust Co.* v. *City Oak Cliffe,* 8 Tex. Civ. App. 217, 27 S. W. 1036; *Tampa* v. *Mugge,* 40 Fla. 326, 24 South. 489; *In re Morgan,* 125 Iowa, 247, 101 N. W. 127; *Phelps Mortgage Co.* v. *Board of Equalization,,* 84 Iowa, 610, 51 N. W. 50; *Cerbat Min. Co.* v. *State,* 29 Hun, 81; *Greenwoods Co.* v. *New Hartford,* 65 Conn. 461, 32 Atl. 933.

Description of property by the assessor is sufficient if it affords the means of identification and informs the owner what tract is delinquent, or at least is not calculated to mislead him. Black on Tax Titles, p. 142; Rev. Stats. 1887, par. 2717; *Ontario Land Co.* v. *Yordy,* 212 U. S. 152, 53 L. Ed. 449. Defective description given in by the owner binds him. Black on Tax Titles, p. 143; *Lane* v. *March,* 33 La. Ann. 554. Parol evidence is admissible for the purpose of identification of property. The courts hold to the maxim, "*Id certum est quod certum reddi potest.*" Parol evidence is then admissible in aid of identification, and thus renders that certain which might otherwise be ambiguous. Black on Tax Titles, 2d ed., 141; Cooley on Taxation, 404; *People* v. *Mahoney,* 55 Cal. 286. The court has no jurisdiction to consider questions of valuation in this proceeding, for the reason that the court cannot alter or change valuations. Ariz. Rev. Stats. 1901, par. 3875.

Relief from illegal tax must be sought in the statutory manner. *Rickets* v. *Crewdson,* 13 Wyo. 284, 79 Pac. 1042, 81 Pac. 1.

E. E. Ellinwood and Judson & Green, for Appellee.

The assignments of errors do not conform to the requirements of the statute and the rules of this court, and should not be considered by the appellate court. Ariz. Rev. Stats. 1901, par. 1586, as amended by Laws of 1907, c. 74; Rules of Court, 8 Ariz. iv; *Daniel* v. *Gallagher,* 11 Ariz. 151, 89 Pac. 412; *Prescott Nat. Bank* v. *Head,* 11 Ariz. 213, 90 Pac. 328;

*Liberty Mining & Smelting Co.* v. *Geddes,* 11 Ariz. 54, 90 Pac. 332, and *Hardiker* v. *Rice,* 11 Ariz. 401, 94 Pac. 1094.

The list of property, whether made by the taxpayer or the assessor, is a memorandum merely for the personal use of the assessor in making up the assessment-book, and is not evidence in a suit for the collection of taxes assessed. *State ex rel. Hudson* v. *Carr,* 178 Mo. 229, 77 S. W. 543. The assessment lists are mere preliminary memoranda for the assessor's use and not evidence in a suit for the collection of taxes, but the primary evidence is the tax-book.

"Whenever any tax is paid to the tax collector, he shall mark the word 'paid' and the date of the payment in the duplicate assessment-roll, opposite the name of the person or description of the property liable for such tax, and shall give a receipt therefor specifying the amount of the assessment, the amount of the tax, the amount paid, date of payment, description of the property assessed, *with sufficient certainty to identify it,* and the year for which the tax was assessed; but *no tax collector shall receive any taxes on real estate for any portion less than the least subdivision entered on the assessment-roll.*" Ariz. Rev. Stats. 1901, par. 3900. A separate assessment of each tract or lot of land is essential to a valid assessment in Arizona.

"The collector can sell such, and only such, lands as the law gives a lien upon; and the lien attaches to such, and such only, as are legally assessed, and to the specific and definite parcel upon which the tax is laid. If there is no definite parcel taxed there can be no lien, and if no lien there can be no legal sale." Black on Tax Titles, sec. 112, p. 143; *Powers* v. *Bowdle,* 3 N. D. 107, 4 Am. St. Rep. 511, 54 N. W. 404, 21 L. R. A. 328; *Greene* v. *Lunt,* 58 Me. 518; 1 Desty on Taxation, 564, 573; *Bidwell* v. *Webb,* 10 Minn. 59, 83 Am. Dec. 56; *Thibodaux* v. *Keller,* 29 La. Ann. 508; *Morristown* v. *King,* 79 Tenn. 669; *Pfeiffer* v. *Miles,* 48 N. J. L. 450, 4 Atl. 429; *Evans* v. *Newell,* 18 R. I. 38, 25 Atl. 347; *Grisson* v. *Furman,* 22 Fla. 581; *Dingey* v. *Paxton,* 60 Miss. 1038; *People* v. *Reat,* 107 Ill. 581; *Keane* v. *Cannovan,* 21 Cal. 302, 82 Am. Dec. 738; *People* v. *Mahoney,* 55 Cal. 286; *Hayden* v. *Foster,* 13 Pick. (Mass.) 492. The complainant has not pleaded estoppel in this case, nor facts constituting an estoppel, and had the matter been plead, the act of the appellee in handing to the

assessor a memorandum of its property was to aid the assessor in discovering the same and entering it upon the assessment-roll by its proper description. *State ex rel. Hudson* v. *Carr,* 178 Mo. 229, 77 S. W. 544.

"One is estopped from denying the truth of his own statement if his denial would mislead and prejudice another who acted in reliance thereon, but the state in collecting its revenue cannot apply the rule of estoppel to citizens who have not fully reported the necessary data for assessing them, unless the citizens are acting in fraud and evasion of the law." *Chicago N. W. Ry. Co.* v. *Auditor General,* 53 Mich. 79, 18 N. W. 586; *Kenshaw* v. *Bissell,* 18 Wall. (U. S.) 271, 21 L. Ed. 841; *Ketchum* v. *Duncan,* 96 U. S. 659, 24 L. Ed. 868.

LEWIS, J.—The description of the sixty-five patented mining claims of the appellee, by name, as found upon the original assessment-roll, was sufficient. The statute then in force (paragraph 2652, Revised Statutes of 1887) provides: "It shall be the duty of the assessor to prepare a tax list or assessment-roll, . . . in which book or books he shall set down in separate columns: . . . Second. All real estate taxable to each inhabitant, firm, incorporated company or association, described by metes and bounds, or by common designation or name, if situate within the limits of any city or any incorporated town, describing by lots, or fractions of lots; if without said limits, giving the number of acres as nearly as can conveniently be ascertained, and the location and township where situate; all improvements upon public lands, describing as nearly as possible the location of such improvements. . . . Sixth. The total value of all property taxable to each, . . . and the description of real estate shall be sufficient if the same can be readily identified thereby." The name of a mining claim is a "common designation or name" within the meaning of the statute. By such name the real estate may be "readily identified." There can be no valid location of a mining claim without the selection of a name therefor. The name must be inserted in the location notice, is inserted in the patent, and the notice and patent made a matter of public record. The practice of assessing patented mines by name has obtained too long in this territory to be now questioned. This mode of assessment is a prac-

tical construction of the statute, of which we may take judicial notice, and is of weight in the determination of the validity of an assessment so made. *Copper Queen Min. Co.* v. *Territory,* 9 Ariz. 383, 84 Pac. 511.

The appellee was entitled to a separate assessment of its property in tracts or parcels, unless it waived that right by the list it returned to the assessor. The appellant contends that the appellee is estopped by the return of the property described as a single tract or parcel of land from asserting illegality in the assessment here made *en masse.* There is force in appellee's argument that there is no technical estoppel *in pais* pleaded or proven. *Centennial etc. Co.* v. *Juab County,* 22 Utah, 395, 62 Pac. 1024. Yet the expression is frequently used in tax cases. *Inland Lumber Co.* v. *Thompson,* 11 Idaho, 508, 114 Am. St. Rep. 274, 83 Pac. 936, and cases therein cited. The Idaho court reaches the conclusion that in tax cases there should be a liberal application of the principle of estoppel in favor of upholding and enforcing an assessment against the taxpayer. Waiver is a definitive expression applicable to the action of appellee in making its list for taxing purposes. Returning its property *en masse* was a voluntary relinquishment of the known right of separate assessment. The taxpayer should not now be heard to complain. *Kissimee City* v. *Drought,* 26 Fla. 1, 23 Am. St. Rep. 546, 7 South. 525. Nor does the fact that the list returned was not verified by the oath of the superintendent of the mining company lessen its effect as such waiver. It is, nevertheless, a voluntary statement by the appellee of the manner in which its property might be properly assessed. *State ex rel. Smith* v. *Cooper,* 59 Wis. 666, 18 N. W. 438.

The most important question raised upon the record is as to the validity of the action of the board of supervisors, sitting as the board of equalization, in raising the assessment upon eight of the group of sixty-five claims originally assessed *en masse,* in amounts varying from $50,000 to $1,000,000 each. The action of the board of equalization in making this raise is disclosed by the minutes following:

"In the matter coming on this day regularly to be heard before the board of equalization pursuant to a notice heretofore served upon said company in writing, and which notice appears in the minutes of said board, and in which said notice

it was proposed to change and correct the valuation of said company's property as the same appears upon said assessment-roll, by adding thereto the sum of $3,464,895, for the reason that the sum fixed in said assessment-roll appears to be too small; and this being the day and hour fixed in said notice for the hearing, and pursuant to a notice so given Walter . Douglas, superintendent and agent of said company, appeared before the board in behalf of said company and made statements regarding said valuations and his arguments in reference thereto, and the board being now fully advised in the premises, finds it necessary to add to the assessed valuation of the property of said company on the assessment-roll as follows, to wit:

| | | |
|---|---:|---|
| Silver Spray mine | $1,000,000 | 00 |
| Hoisting works and improvements on said mine | 50,000 | 00 |
| Holbrook mine | 1,000,000 | 00 |
| Hoist and improvements thereon | 10,000 | 00 |
| Copper Queen mine | 50,000 | 00 |
| Copper Jack mine | 50,000 | 00 |
| On buildings and other improvements | 50,000 | 00 |
| On Baxter mine | 250,000 | 00 |
| On Atlanta mine | 250,000 | 00 |
| On Dividend mine | 350,000 | 00 |
| On Rucker mine | 200,000 | 00 |
| Stock of mdse. in C. Q. store and warehouse | 203,520 | 00 |
| Surveying instruments | 375 | 00 |
| Horses | 400 | 00 |
| Assaying outfit | 600 | 00 |

Or a total valuation of.................$3,464,895 00''

Paragraph 2654 of the Revised Statutes of 1887 provides: ". . . .The board of equalization shall have power to determine whether the assessed value of any property is too small or too great, and may change and correct any valuation, either by adding thereto or deducting therefrom, if the sum fixed in the assessment-roll be too small or too great, whether said sum was fixed by the owner or the assessor; . . . and the clerk of the board of equalization shall note upon the assessment-roll all changes made by the board. During the session of the board of equalization the assessor shall be present, and

also any deputy whose testimony may be required by the parties appealing to the board, and they shall have the right to make any statement touching such assessment, and producing evidence relating to questions before the board, and the board of equalization shall make use of all other information that they can gain otherwise, in equalizing the assessment-roll of the county, and may require the assessor to enter upon such assessment-roll any other property, which has not been assessed; and the assessment and equalization so made shall have the same force and effect as if made by the assessor before the delivery of the assessment-roll to (by) him by (to) the clerk of the board of equalization. . . . ''

The raise here made was never entered upon the original assessment-roll. This was a mere omission, and harmless. *Wallapai Min. Co.* v. *Territory,* 9 Ariz. 373, 84 Pac. 85. The raise was first carried into the tax-books by an entry upon the duplicate assessment-roll as follows:

## Duplicate Assessment Roll of Cochise County, Arizona Territory, for the Year 1901

| NAME OF TAXPAYER. | REAL ESTATE AND PERSONAL PROPERTY. DESCRIPTION OF | No. of Acres | Value of Real Estate. | Value of Improvements on Real Estate. | Value of Personal Property. | CHANGES MADE BY COUNTY BOARD OF EQUALIZATION. Description of Property | Amount | Total Valuation. | County Tax. | Territorial Tax. | Total Tax. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Copper Queen Con. Mining Co. 419 | —Bisbee—<br>65 Patented Mining Claims.<br>Atlanta, Ace of Spades, Amazon, Baxter, Best Piece, Copper Queen, Copper Jack, Copper King, Copper Prince, Copper Bullion, Cumberland, Cave, Dividend, Wedge, Ellio Coon, East Side, Frank Cogswell, General, Golden Gate, Goddard, Gardner, Hendricks, Hayes, Holbrook, Powell, Harrison, Iron Roaster, Little Nell Lookout, Mammoth, Marinia, New York, Neptune, North Star, Ophir, Rucker, Sun Rise, Space, Surprise, Silver Spray, Silver Bear, Sunny Side, Sacramento, Tip Top, Triangle, Uncle Sam, Wide Awake, Copper Chance, Von White, Tail Deer, Bisbee Bell Lode, Columbia, Copper Monarch, Copper Crown, Copper Globe, Cuprite, Hardscrabble, Keystone, Lucky Jack, Raymond, Stars and Stripes, South View, Tack, Union, Virginia.<br>Improvements consist of Store building, Warehouse, Hospital -Building, Office, and Doctor's Residence, and 3 houses. No. 48, 49 and No. 50. 150 ft. frontage on south side of Main St. extending from Copper Jack mining claim west end line in westerly direction on which are located Dr.'s office and Library building.<br>St. on north side Main St. Store No. 6.<br>106 ft. frontage on north side Main St. extending from Copper Jack claim west end line in a westerly direction fenced in as a park and not occupied by any building except Fire Engine House.<br>Supt. dwelling, etc., No. 112, 1st Dist.<br>The Bessemer, No. 113, 1st Dist.<br>Lot.<br>Part of " Lot.<br>" " " Lot.<br>Store at Naco.<br>Furniture.<br>Library.<br>Piano.<br>Merchandise, Naco.<br>—Bisbee—<br>Safe and Office Furniture.<br>20 Work Horses.<br>Wagons, etc.<br>Harness, etc.<br>Lumber and Lagging.<br>Hoisting Works, etc.<br>Smelting Works.<br>Mill, Mine and Smelter Supplies and Coal and Coke.<br>Surveyors Inst. and Assaying Outfit.<br>Cars and Car Track. | 436<br><br><br>20.1000<br>76.1000<br>67.1000 | 3,180.00<br><br>4,900.00<br>200.00<br><br>1,600.00<br>1,000.00<br>260.00<br>750.00<br>40.00 | 65431.00<br><br>7800.00<br>760.00<br><br><br>2000.00<br>3000.00<br><br><br>10000.00<br>2340.00 | 1,300.00<br>300.00<br>100.00<br>13,375.00<br>75,450.00<br>1,500.00<br>610.00<br>195.00<br>11,668.00<br>46,641.00<br>112,462.00<br><br>5,073.00<br>225.00<br>6,000.00 | —Raise—<br>Silver Spray Mine........ "<br>Hoisting works on said mine<br>Holbrook Mine ........<br>Hoist & Imp........<br>Copper Queen Mine........<br>Copper Jack "<br>Bldg & Imp........<br>Baxter........<br>Atlanta Mine........<br>Dividend "<br>Rucker "<br>Mdse, Store & W'h'se........<br>Surveyors Inst........<br>Assaying Outfit........<br>Horses........ | 1,000,000.00<br>60,000.00<br>1,000,000.00<br>60,000.00<br>60,000.00<br>60,000.00<br>60,000.00<br>350,000.00<br>350,000.00<br>350,000.00<br>200,000.00<br>293,520.00<br>50,00<br>400.00 | 122,662.09<br>14,123.12<br>3,850.09¾ | Dec. 9, '01    $100,823.27<br><br>77,810.59 | Paid on Account.<br>Balance due.<br><br>44,846.50 | 122,657.09 |

Disregarding for the present a variation in the names of the sixty-five claims, the delinquent tax-roll, the back-tax book, and the back-tax bill substantially conform to the duplicate assessment-roll, except as to certain entries of payments, penalties, and interest. It is apparent from an examination of this roll that there are in effect two assessments for the same year against each of the eight claims raised. One, an assessment, commingles with that of sixty-four other claims, *en bloc*; the other, separate and distinct. This is no mere irregularity. The legality of the original assessment as an entirety has been sustained solely upon the ground that the property was so returned by the taxpayer. The board disregarded such return, and the validity of its action must be determined under the statute alone. It might be argued successfully that had the board of supervisors raised the assessment upon the group, such a raise would have been valid. But the board segregated from the group certain claims, and imposed thereon an additional assessment. It is a fundamental rule of taxation in this territory that a taxpayer may pay upon any one of parcels separately assessed, discharging the lien thereon, without paying upon the remainder. Rev. Stats. 1887, par. 2676.

Judge Cooley says: "When two parcels are owned by the same person, if the statute requires a separate assessment, obedience to the requirement is essential to the validity of the proceedings. It cannot be held in any case that it is unimportant to the taxpayer whether this requirement is complied with or not. Indeed, it is made solely for his benefit; it being wholly immaterial, so far as the interest of the state is concerned, whether separate estates are or are not separately assessed. And where a requirement has for its sole object the benefit of the taxpayer, the necessity for a compliance with it cannot be made to depend upon the circumstances of a particular case, and the opinion of a court or jury regarding the importance of obedience to it in that instance. That method of construing statutes would abolish all certainty." Cooley on Taxation, p. 735. By the action of which complaint is made here, the board deprived the appellee of this right. Upon the raise being made it had the legal right to determine upon which, if any, of the claims so raised it would pay. If it determined to pay upon none, it was nevertheless obliged to

pay a portion of the tax thereon if it exercised its right to pay upon the fifty-seven claims remaining, for the tax collector, under paragraph 2676, *supra* (re-enacted, paragraph 3900, Revised Statutes of 1901), could not receive the tax upon less than the entire sixty-five claims, that being the least subdivision appearing on the assessment-roll. If it determined to pay upon one or more of the eight so raised, and to abandon the remainder, it would have to pay the tax upon the raise, together with the tax upon the entire sixty-five claims as originally assessed. The undisputed testimony discloses that these claims were noncontiguous, in instances which would have invalidated an original assessment, except for the return. The board in raising this assessment disregarded the original classification, which has been held good as against the appellee solely by reason of its return. The board of supervisors, sitting as a board of equalization, had no power under paragraph 2654 of the Revised Statutes of 1887 to segregate, from a tract of land returned and assessed as one parcel, a portion thereof and impose thereon an additional assessment, without first determining that such tract was improperly assessed as a whole, and causing such tract to be reassessed and raised in subdivisions in such manner as to preserve the right of the taxpayer to discharge the lien of taxes upon such of the several separate tracts as he might elect.

The question here determined was neither presented nor considered in the case of *County of Cochise* v. *Copper Queen Co.*, 8 Ariz. 221, 71 Pac. 946. Upon the trial of the case, the court received all evidence offered subject to the various objections made thereto. To the offers by the plaintiff of the assessment-roll, the duplicate assessment-roll, the delinquent assessment-roll, and the back-tax book, the defendant objected upon the ground of a variance from the allegations of the complaint. The list of mining claims set forth in paragraph 4 of the complaint is as follows: "Sixty-five (65) patented mining claims near Bisbee, Ariz., as follows: Atlanta, Ace of Spades, Amazon, Baxter, Best Piece, Copper Queen, Copper Jack, Copper King, Copper Prince, Copper Bullion, Cumberland, Cave, Dividend Wedge, Ellie Coon, East Side, Frank Cogswell, General, Golden Gate, Goddard, Gardner, Hendricks, Hayes, Holbrook, Howell, Harrison, Iron Monster, Little New York, Lookout, Mammoth, Malvina, New York,

Neptune, North Star, Ophir, Rucker, Sun Rise, Space, Surprise, Silver Spray, Silver Bear, Sunny Side, Sacramento, Tip Top, Triangle, Uncle Sam, Wade Hampton, Wood Chopper, White Tail Deer, Bisbee, Belle, Isle, Columbia, Copper Monarch, Copper Crown, Copper Globe, Cuprite, Hardscrabble, Keystone, Lucky Jack, Raymond, Stars and Stripes, South View, Tack, Union, Virginia''—said mining claims consisting of 636 acres, thus naming sixty-five claims. It differs from the list shown in the assessment-roll in this: It names the ''Dividend Wedge,'' the ''Howell,'' the ''Belle'' and the ''Isle,'' which are omitted from the assessment-roll; and it omits the ''Dividend,'' the ''Wedge,'' the ''Powell,'' the ''Little Joker,'' the ''Sunrise,'' and the ''Belle Isle,'' all of which are included in the assessment-roll; it names only sixty-five claims, whereas the assessment-roll names sixty-seven. Disregarding the discrepancy in the naming of the Dividend Wedge and the Belle Isle as a mere matter of punctuation and the writing of Sun Rise as a compound name, the error in the names ''Howell'' and ''Powell'' and the mention of the Little Joker claim in the assessment list is a material variance which would render the assessment list inadmissible in proof of the allegations of the complaint. Again the complaint differs from the list shown in the duplicate assessment-roll in this: It names the ''Howell,'' the ''Dividend Wedge,'' the ''Belle'' and the ''Isle,'' all of which are omitted from the duplicate assessment-roll; and it omits the ''Powell,'' the ''Dividend,'' the ''Wedge,'' and the ''Belle Isle,'' all of which are included in the duplicate assessment-roll. The variance disclosed renders the roll inadmissible under the complaint. Again, it differs from the list contained in the delinquent roll in this: It names the ''Dividend Wedge,'' the ''Howell,'' and the ''Silver Bear,'' all of which are omitted from the delinquent roll, and it omits the ''Dividend,'' the ''Wedge,'' and the ''Powell,'' all of which are included in the delinquent roll. The delinquent roll is therefore inadmissible. And, finally, the back-tax book is inadmissible under the objection made, for the complaint differs from the list in the back-tax book in this: It names the ''Dividend Wedge,'' the ''Howell,'' the ''Silver Bear,'' the ''Belle,'' and the ''Isle,'' all of which are omitted from the back-tax book, and it omits the ''Dividend,''

the "Wedge," the "Powell," and the "Belle Isle," all of which are included in the back-tax book.

The importance of the objections here considered is rendered more apparent by a consideration of the nature of the action. It is an action *quasi in rem* to fix a lien upon specific property. No personal judgment can be had. The statute (Laws 1903, Act No. 92, section 88) provides: "The judgment, if against the defendant, shall describe the land upon which the taxes are found to be due, shall state the amount of taxes and interest found to be due upon each tract or lot, and the year or years for which the same are due, up to the rendition thereof, and shall decree that the lien of the territory be enforced and that the real estate or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold, and execution shall be issued thereon, which shall be executed as in other cases of judgment and execution, and said judgment shall be a first lien upon said land." This statute was adopted from Missouri, and the prior construction thereof by the courts of last resort of the state of Missouri is, under well-established principles, controlling upon us. A judgment in an action to collect back taxes, differing from the complaint in the description of the property sought to be subjected to the lien of such tax, is void. *Milner* v. *Shipley* (1888), 94 Mo. 106, 7 S. W. 175; *Vaughan* v. *Daniels* (1889), 98 Mo. 230, 11 S. W. 573; *O'Day* v. *McDaniel* (1904, subsequent to the passage of Act No. 92), 181 Mo. 529, 80 S. W. 895.

Nor is the admission of this evidence rendered harmless by the proof that an amount equivalent to the tax upon the property as originally assessed was tendered by the appellee in full payment of its tax, for the purpose of bringing a suit in equity to enjoin the collection of the tax upon the various raises, and subsequently paid to the county in the course of suit, and credited by it upon the entire tax claimed to be due. Assuming that it was paid and accepted as a discharge of the original tax, as appellant now contends was the fact, the amount now in suit is the tax upon the raise. Without a valid original assessment there could be no raise. The fact of payment of the original tax does not dispense with the necessity of proof of an assessment admissible under the facts alleged in the complaint.

The defendant also objected upon the ground of variance to proof of the action of the board of equalization as disclosed by the minutes of its meetings. Upon the introduction of the various exhibits showing the separate raises of each of the eight claims therein mentioned, the defendant renewed this objection. To determine whether or not the variance is material, the allegations of the complaint must be examined. Paragraph 4 of the complaint contains the only description of the property sought to be subjected to the tax lien. So far as essential the allegation is "Sixty-five (65) patented mining claims near Bisbee, Arizona [then follows the list by name as hereinabove set forth]," said mining claims consisting of 636 acres assessed at $3,180. In paragraph 6 appears the allegation as to the raise, namely, "To the valuation of the patented mines and improvements $3,260,000." In paragraph 14 the pleader alleges the amount due, "all of which is a lien upon the lands and real estate owned by and assessed against said Copper Queen Consolidated Mining Company for the year 1901, as hereinabove set forth." Nowhere is there a reference to the specific raise upon the eight claims against which the lien is now asserted, nor is there a further description thereof. The prayer of the complaint was originally for a foreclosure of the alleged lien against the tract of sixty-five claims as an entirety. By leave of the court, subsequent to the admission of the evidence under consideration, the prayer was amended to read: "That the said judgment and whole thereof be adjudged and decreed to be the first and paramount lien upon such of the aforesaid described lots, tracts, and parcels of land and real estate as the court may, from the proof, adjudge to be subject to a lien for said taxes in favor of the territory of Arizona." There was, however, no amendment of the allegations of fact upon which relief was sought. The complaint therefore alleges a raise of the sixty-five claims *en bloc.* The proof of raise upon eight of the sixty-five claims, upon which alone it is now sought to foreclose the lien, is a substantial variance.

The trial court did not err in rendering and entering judgment for the defendant. The judgment, therefore, is affirmed.

KENT, C. J., and CAMPBELL and DOE, JJ., concur.