[Civil No. 4533.   Filed March 22, 1943.]

[135 Pac. (2d) 149.]

J. WILLIAM WAARA, Appellant, v. GOLDEN
TURKEY MINING COMPANY, a Corporation;
W. L. ALLISON, Trustee; THE BANK OF ARI-
ZONA, a Corporation, and WALLACE L. COOK,
Appellees.

Messrs. Cornick & Carr, for Appellant.

Messrs. Crawford, Baker & Favour, Messrs. Byrne & McDaniel and Messrs. Sloan, Scott & Green, for Appellees.

ROSS, J.—From a judgment denying plaintiff's claim of lien for work and labor, he has appealed.

The case was decided by the court upon the issues made by the pleadings. The plaintiff, a civil and mining engineer, during a period extending from February 4, 1936, to on or about August 14, 1941, did and performed work and labor for the defendant Golden Turkey Mining Company in connection with his employment as such engineer. It appears from his complaint and his claim of lien that during said time he and the mining company had business dealings as follows:

1. On February 4, 1936 he orally contracted with the defendant mining company to perform labor in doing general survey work in connection with the development and operation of its mining properties and ore development work; in locating and appropriating water rights and dam sites; in surveying and locating adjacent mining property, and other miscellaneous work, at a daily wage of $20 for 184.2 days just preceding the filing of the complaint, and that he furnished map materials and supplies of the value of $36.55, or a total of $3,720.55, on which a payment of $2,500 had been made, leaving a balance due of $1,220.55.

2. On the same date, in writing, he contracted with said defendant to perform labor in making a survey and compiling a contour map of certain portions of the Golden Turkey mine and the Golden Belt mine (the latter being operated under lease to the Golden Turkey Mining Company) for the agreed sum of $1,300, which was reduced by agreement to $650.

3. On February 10, 1939, in writing, he contracted to perform labor in surveying, platting and preparation of a set of underground maps showing certain workings in the Golden Turkey mine, at the agreed price of $1,500 per year, under which he worked for the mining company for two years and five months, from January 1, 1939; that there is due on this claim $3,475.

4. Also, on February 10, 1939, in a written contract, he agreed to and did perform work and labor, in surveying and platting old underground workings in the Golden Turkey mine and in areas outside the Golden Turkey property, at $20 per day, and that he worked at such labor for 45.75 days and earned $935, no part of which has been paid; and

5. On April 15, 1939, he orally contracted with defendant mining company to perform work and labor on and in the Golden Belt mine, to consist of general survey work of its development and operations, at a wage of $20 per day, for 44.8 days, or the sum of $896, no part of which has been paid.

The total balance of the claim is $7,176.55, for which plaintiff prays judgment, and that it be adjudged and decreed that he has valid, subsisting and superior liens upon the described mines and mining claims, personal property, improvements, etc., and that his liens be foreclosed against such properties.

The defendants, in addition to the Golden Turkey Mining Company, are: W. L. Allison, Trustee, who is alleged to have an interest in some of the mining claims and properties against which a lien is sought; the Bank

of Arizona, which holds mortgage liens against the mines and mining claims and other properties of the Golden Turkey Mining Company, and one Wallace L. Cook, who also holds mortgage liens thereon.

The defendants separately moved that the action be dismissed upon the ground and for the reason that the complaint fails to state a claim upon which the relief requested can be granted. This motion was taken under advisement and thereafter granted and the action dismissed, for the reason, as found and concluded by the court,

"that under the statutes of Arizona a civil or mining engineer is not a miner or laborer entitled to a miner's or laborer's lien, and that the plaintiff, J. William Waara . . . is not entitled to and has no such lien upon any of the property mentioned and described in the amended complaint, or upon any of the property of the defendants."

From this judgment the plaintiff has appealed.

As is seen, the claims for services for which a lien is sought were five in number, extending over a period of more than five years, with various time coverages. The accrued earnings, during that time were, as shown, $9,676.55, and there had been paid (time not stated) only the sum of $2,500, leaving a balance of $7,176.55, for which a claim of lien is made.

■ The questions as to whether the claims for lien were made out, served and filed in the county recorder's office in the manner and within the time prescribed by sections 62–201, et seq., Arizona Code 1939, were not involved below and are not involved on this appeal. The only question now is the lienability of the appellant-claimant's demand. His rights, whatever they are, unquestionably originate out of labor and professional services, as a civil and mining engineer, performed in connection with the mining company's mines or mining claims. It is a matter of common knowledge that miners

and laborers usually, if not universally, are paid their wages regularly and at stated intervals. Under the Arizona law "underground" miners' and laborers' hours are limited to eight in each 24 (§§ 56–114 and 56–115) and their wages are due and payable twice a month. (§ 43–1601.) This has been the law since some time before the lien claimant began to work for the mining company and is the law now.

Sometimes the courts and text-writers refer to liens of the kind as "secret liens" (40 C. J. p. 40, § 1), because no record notice is made of them until after the contract under which the lien is claimed is fully completed. Where the miner or laborer is paid his wages at short stated intervals as contemplated, if not required, those persons having dealings with the owner of the mining property, or his lessee, may, by slight investigation, inform themselves of the existence or nonexistence of lienable claims for wages or materials, but not so when the work is performed under a contract extending over a period of years, whether for a lump sum or for a *per diem.*

█ A civil and mining engineer is employed, we assume, because of his educational training to do certain kinds of technical or skilled work and usually is not required or expected to take directions or instructions from his employer except as to the final result, and accordingly is paid for his services, not for the physical effort in accomplishing a result but for his skill and knowledge. The manual labor he performs is not the reason for his employment but is an incident to his work; it does not necessarily transform him into a laborer or miner, as those words are used in the lien law of the state. He is employed to render a service very different from that of the miner or laborer. In his sphere he is the alter ego of the mining company and is no more the object of the lien law than is the manager or the president of the mining company.

We quote the material portion of the statute giving a lien on mines and mining claims for labor and materials:

"Miners, laborers and persons who furnish materials or merchandise of any kind, designed for or used in or upon any mine, or mining claim, and to whom any sum is due for such labor, material or merchandise, shall have a lien upon the same for such sums as are unpaid. . . . The lien shall attach to the mine or mining claim in or on which, said labor was performed, or material or merchandise furnished, in preference to any prior lien or encumbrance, or mortgage upon said mine or mining claim." § 62–209, Ariz. Code 1939.

██ Paragraph 3654, Revised Statutes of Arizona 1913, Civil Code, as amended by Chapter 67, Session Laws of 1915, reads: "All miners, laborers *and others who may labor,*" etc. In the revision of 1928 (section 2028) this language was changed to read as it now appears in section 62–209, *supra*. It is insisted by appellant that the italicized words above set out should be supplied in order to make sense and subserve the purpose of the law. The revision of 1928 was not intended to change the meaning of the law but to simplify and reduce the language. *In re Sullivan's Estate,* 38 Ariz. 387, 300 Pac. 193. The omission of the italicized words from the revision, instead of clarifying something in doubt only casts doubt where before it was clear. The revised section should read as it was before the revision, otherwise those evidently intended to have liens for their labor might not be protected. It is but common sense and entirely in consonance with the purpose of the law to supply in the revision the omitted words from paragraph 3654, *supra*. The language used, as thus corrected, is very comprehensive. The conjunctive expression "and others who may labor" implies that the benficence of the law extends to and includes persons generally who labor "in or upon any mine, or mining claim." Whether the legislature intended it or not,

the language literally includes any manual labor in or upon the mining property—that performed by professionals as well as that performed by miners or ordinary laborers.

Now, if it be assumed that appellant was a miner or laborer, or that he belonged to the class indicated in the phrase "others who may labor," the question is, How much of his compensation was for his labor and how much for his professional services? This is important for the reason that he is entitled to a lien only for his manual labor. He alleges that his compensation was $20 per day in some of his contracts and lump sums in others. $20 is considerably more than the ordinary miner or laborer at that time would receive, perhaps three or four times as much. That portion of appellant's compensation ascribed to his professional services was not earned in labor "in or upon any mines, or mining claims," but in a mining and engineering school, perhaps years before his employment, and in his office in making contour and underground maps and doing other things in line with his profession as an engineer.

The rule, where lienable and nonlienable items are commingled in a lien claim, under statutes very much like ours, is discussed and stated in *Boyle* v. *Mountain Key Mining Company*, 9 N. M. 237, 50 Pac. 347, 351, from which we quote as follows:

" . . . In *Barnard's Adm'r* v. *McKenzie*, 4 Colo. 251, it is declared that the statute contemplates a lien only for such labor as may have been performed in the development and improvement of the mine,—which has been incorporated with it and constitutes a part of its value. Says Elbert, J.: 'The lien provided for by section 4 (substantially the same as our statute), above quoted, is for work and labor "in or upon any mine, lode or deposit," and for materials furnished "to be used in or about any mine, lode or deposit." This language fixes clearly the relation which the work and

labor must sustain to the property sought to be charged. It contemplates only such labor or material as has been performed and furnished in the development, improvement, or conservation of the mine, which has become incorporated with the mine and constitutes a part of its value. To give a lien for work or labor not performed, in the language of the section, ''in or upon the mine,'' would not be construction, but judicial legislation.' The services were rendered under one contract for a specific salary, and it is impracticable to make any apportionment upon the basis of a *quantum meruit*. No allotment of the amount due can be applied to the respective occupations. 'If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items.' 2 Pars. Cont. p. 519. It is well settled that a lien account which so mingles items for which the law gives no lien with those for which a lien may be had that they cannot be separated upon a mere inspection is void. In *Baker* v. *Fessenden,* 71 Me. 292, the court says: 'Thus, if the plaintiff might legally have had a lien for a portion of his labor, he has so intermixed and interwoven it with that for which he has shown none that it is utterly impossible for the court, and probably for the parties, to make any such distinction between the two kinds as to authorize a lien judgment for any definite amount.' In *Edgar* v. *Salisbury,* 17 Mo. 271, it is decided: 'Where, in a demand filed by a person seeking to avail himself of the benefit of the act concerning mechanics' liens, services for which he might have a lien are combined with other charges, for which no lien is given, and the whole summed up in one item, so that it is impossible to ascertain from the account filed how much of the gross charge is a lien, the party will lose the whole benefit of the act.' . . . ''

The rule in the state of Oregon is as follows:

''An account containing a lumping charge, in which is mingled an item for which no lien is given, will not support a lien; and the defect cannot be cured by oral evidence, by means of which the items for which a lien is given may be separated from those for which a lien is not given. [Citing cases.]''

This rule, announced by numerous decisions of the Supreme Court of the state, is quoted and approved in *Christman* v. *Salway,* 103 Or. 666, 205 Pac. 541, 544.

The work performed by the appellant was under entire contracts, that is, he was to receive a certain sum per day or lump sums for his services, those professional and for which he is not entitled to a lien, and those for manual labor, lienable under the law. Just how these should be apportioned the law is unable to say, when they are commingled as here. For that reason, we conclude any claim of lien is void.

The judgment of the lower court is affirmed.

McALISTER, C. J., and STANFORD, J., concur.