462 P.2d 409

**The STATE of Arizona, ex rel. Geraldine C. SWIFT, Estate Tax Commissioner, Appellant,**

**v.**

**Robert S. TULLAR, as Administrator of the Estate of James Edwin Beattie, Deceased, Appellee.**

**No. 2 CA–CIV 732.**

Court of Appeals of Arizona, Division 2.

Dec. 15, 1969.

Gary K. Nelson, Atty. Gen., by Leonard M. Bell, Asst. Atty. Gen., Phoenix, for appellant.

Chandler, Tullar, Udall & Richmond, by Joseph R. McDonald, Tucson, for appellee.

HOWARD, Judge.

This is an appeal from a superior court decree determining heirship, directing that one-half of the estate of the deceased be distributed to the descendants of the deceased's maternal great-grandparents and denying an escheat of this part of the estate to the State of Arizona.

The petition requested that the superior court determine heirship in that the decedent died intestate and was not survived by a spouse, children, issue, mother, father, brothers, sisters, grandparents, great-grandparents or by descendants of brothers and sisters. Surviving the decedent were three descendants of his paternal grandparents and many descendants of his maternal great-grandparents.

The petition and notice of hearing were served upon the Attorney General of the State of Arizona because of the possibility that the maternal moiety of the estate could escheat to the State of Arizona.

A hearing was held and the trial court in its memorandum opinion and order held that the descendants of the maternal great-grandparents are entitled to a moiety of this estate.

The respondent-appellant, the State of Arizona, contends:

1. That descendants of maternal great-grandparents are not entitled to inherit,

2. That the one-half moiety of the estate which did not pass to the descendants of the maternal great-grandparents escheats to the State of Arizona.

The central issue herein concerns the construction to be given A.R.S. § 14–202, subsec. 4, which reads as follows:

\* \* \* \* \* \*

"4. If there are none of the kindred named in paragraphs 1, 2 and 3 of this section, then the estate shall be divided into moieties, one of which shall go to the paternal grandparents and their descendants and the other to the maternal grandparents and their descendants, who shall take their moiety as parents of the intestate would have taken if living, and so on without end."

In construing the statute in question, we look to A.R.S. § 1–211 which states that statutes shall be construed liberally to effect their object and promote justice. We, therefore, discuss the case with this legislative intent in mind.

With regard to the one-half moiety which the trial court held passed to descendants of the maternal great-grandpar-

ents, the question arises as to whether these descendants are entitled to that portion of the estate or whether it escheats to the State of Arizona.

A.R.S. § 14–202, subsec. 4 originally appeared in the Arizona statutes as § 2116, R.S. (1901), and was taken from art. 1688 (4), Texas Revised Statutes (1895). The latter two are identical except for the inclusion and exclusion of a comma. § 2116, R.S. (1901) reads as follows:

\* \* \* \* \* \*

"4. If there be none of the kindred aforesaid, then the inheritance shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred in the following course, that is to say: To the grandfather and grandmother in equal portions, but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to the survivor and the other shall go to the·descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants, then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no surviving grandfather or grandmother, then the whole of such estate shall go to their descendants, *and so on without end, passing in like manner to the nearest lineal ancestors and their descendants.*" (Emphasis added.)

Thus, as first enacted by the territorial legislature of Arizona, the statute of descent and distribution was in language exactly similar to art. 1688, Texas Revised Statutes (1895), and it remained in the same form in Arizona in § 1901, R.S. (1913). § 977 of the Arizona Revised Code of 1928, which first contained the change in subdivision 4, now before this court for construction, reads as follows:

"\* \* \* 4. if there be none of the kindred aforesaid, then the inheritance *shall be divided into moieties, one of which shall go to the paternal grandparents and their descendants and the other to the maternal grandparents and their descendants, who shall take their*

*moiety as parents of the intestate would have taken if living, and so on without end.*" (Emphasis added.)

No essential change was made in this section by its reenactment as 3 A.C.A. § 39–101 (1939), and finally as A.R.S. § 14–202(4).

To determine the meaning of A.R.S. § 14–202, subsec. 4, examination of the duties and powers of the code commissioner, who drafted the revised code of 1928, is required. The code commissioner was authorized and directed as follows:

"\* \* \* revise and codify the laws of the State of Arizona, such revision and codification to be thorough and complete. The said Commissioner *shall not,* however, undertake to *make any change of existing laws, but shall harmonize* where necessary, *reduce in language, and remove inconsistencies* where the same are found to exist; it being the intention of this Act that said Commissioner shall in no manner assume to exercise legislative power, but shall otherwise seek to bring about a thorough revision and codification of the laws." ch. 35, § 3, (1925) Ariz.Sess. (Emphasis added.)

The code commissioner, in following the above direction, did not change the existing law but he shortened subdivision 4 by deleting the words "\* \* \* passing in like manner to the nearest lineal ancestors and their descendants," as he must have concluded that said words were redundant. Furthermore, the other changes in this subdivision indicate a clear intent on the part of the code commissioner to incorporate by reference the provisions of the second subdivision of A.R.S. § 14–202 and thus harmonize and reduce the language without changing the meaning of the existing law.

Studying the language now appearing in A.R.S. § 14–202, subsec. 4, the court finds the clue to its meaning in the words:

"\* \* \* who shall take their moiety as parents of the intestate would have taken if living, and so on without end."

The words " * * * and so on without end" indicate that there was no intent to cut off the rights of heirs who were descendants of ancestors of the grandparents. Nor does the court find any intent on the part of the legislature to change the existing law when it enacted § 977, R.C. (1928). Such has been the consistent holding with respect to other statutes modified in that revision, see, Waara v. Golden Turkey Mining Company, 60 Ariz. 252, 135 P.2d 149, 149 A.L.R. 677 (1943); and City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598 (1945).

In State ex rel. Conway v. Glenn, 60 Ariz. 22, 131 P.2d 363 (1942), the court held:

" * * * that unless a change in the language of the 1928 code clearly shows that the legislature intended to make a change in the meaning of a previous law, it will be presumed that the change was in form only and that the substance of the previous law was still in effect."

The deletion of the words following the phrase "and so on without end" did not change the meaning of A.R.S. § 14–202, subsec. 4, and it has the same meaning today as it did in § 2116, R.S. (1901), and § 1091, R.S. (1913). Accord, Waara v. Golden Turkey Mining Company, supra, 60 Ariz. at 257, 135 P.2d 149. It is apparent to this court that the omission was " * * * only in the interest of brevity." City of Tucson v. Tucson Sunshine Climate Club, supra, 64 Ariz. at 7, 164 P.2d at 601.

When a statute is adopted from another state, it is presumed that it was taken with the construction placed on it by the courts of the state of origin prior to its adoption. Henrietta Mining & Milling Company v. Gardner, 173 U.S. 123, 19 S.Ct. 327, 43 L.Ed. 637 (1899); Territory v. Copper Queen Consolidated Mining Company, 13 Ariz. 198, 108 P. 960 (1910); In re Estate of McConnell, 101 Ariz. 538, 421 P.2d 895 (1966).

In England v. Ally Ong Hing, 105 Ariz. 65, 459 P.2d 498 (1969), the court said:

"Although we are not bound by the construction given a statute by the courts of the state from which it was adopted, we consider such construction to be persuasive."

In McKinney v. Abbott, 49 Tex. 371 (1878), the facts were on all fours with the case before this court. The descendants of the paternal grandparents argued that they were entitled to the entire estate and that the descendants of the maternal great-grandparents were incapable of taking any share of the estate. The court, in its opinion, quotes from the statute, then Paschal's Digest, R. 3419, as follows:

" * * * The inheritance shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred in the following course, that is to say: To the grandfather and grandmother in equal portions; but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to such survivor, and the other shall go to the descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants, then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no such surviving grandfather or grandmother, then the whole of such estate shall go to the descendants, or such of them as there be, *and so on without end, passing* in like manner *to the nearest lineal ancestors and their descendants,* or to such of them as there be." (Emphasis added.)

In this case, the Texas Supreme Court held that the estate should be divided into moieties, although the decedent's kindred were not of the same degree of relationship to the decedent. Eighty-eight years later, in 1966, the same court refused an application for a writ of error in Golden v. York, Tex.Civ.App., 407 S.W.2d 293; Tex., 410 S.W.2d 181 (writ refused in 1966), in which the decedent died intestate, survived only by descendants of his maternal grandparents and descendants of his

**116**

paternal great-grandparents. The Court of Civil Appeals of Texas held:

"The trial court properly divided the estate into two equal moieties and gave one to the maternal kindred and one to the paternal kindred, even though they were a degree further removed from decedent than were the maternal kindred."

The Texas cases, whether before or after 1901, correctly construed the statute of descent and distribution of Texas and we believe there has been no change in the meaning of § 14–202, subsec. 4 from that which its predecessors had prior to 1928 in Arizona and in Texas.

In view of this court's construction of the meaning of A.R.S. § 14–202, subsec. 4, the decedent died leaving heirs to both moieties and, therefore, his property cannot escheat to the State of Arizona pursuant to A.R.S. § 12–881.

The trial court rendered an excellent memorandum opinion which was very helpful to us.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.