[Civil No. 4269.   Filed April 14, 1941.]

[112 Pac. (2d) 218.]

JOE CONWAY, Appellant, v. STATE CONSOLI-
DATED PUBLISHING COMPANY, a Corpora-
tion, W. R. MATHEWS and CLAIRE R. ELLIN-
WOOD, Owners and Publishers of the Arizona
Daily Star, Appellees.

Mr. Joe Conway, Appellant, *pro se;* Mr. Earl Anderson and Mr. A. R. Lynch, for Appellant.

Messrs. Darnell, Pattee & Robertson and Messrs. Laney & Laney, for Appellees.

ROSS, J.—From an order and judgment dismissing his complaint, on the ground that it was not signed by an attorney or attorneys permitted under the law to "engage in the private practice of law," the plaintiff has appealed.

The complaint, charging the defendants with libeling plaintiff, was filed in the Superior Court of Maricopa County on December 8, 1937. It was signed

> "Earl Anderson
> A. R. Lynch
> Attorneys for Plaintiff."

On January 18, 1938, the time for answering was extended by stipulation between plaintiff's and defendants' attorneys to February 8. Thereafter, on February 7, 1938, defendants filed a motion to strike a portion of the complaint and also filed their answer to the merits. The motion to strike was granted on April 17, 1939.

On September 18, 1939, the action was set for trial on December 13. On November 23 it was reset for December 19. On December 18 it was reset for January 16, 1940.

On December 29, 1939, the defendants filed their motion to dismiss the complaint on the ground that it "is signed by Earl Anderson and A. R. Lynch, both of whom were at the time of the filing of said complaint, have been at all times since, and now are, deputies and assistants of the Attorney General of the state." This motion was granted on January 15, 1940.

At the hearing on the motion, evidence was taken showing that plaintiff at all the times herein was Attorney General of Arizona; that Earl Anderson and A. R. Lynch, his assistants or deputies Attorney General, were his appointees; that Lynch was paid his salary out of the state highway fund; that he was ap-

pointed by the Attorney General with the approval of the highway department and that his duties were exclusively in connection therewith. It was also shown that plaintiff, Anderson and Lynch had collaborated before the filing of the complaint and in its drafting; that plaintiff personally dictated a portion of it, took it to the clerk's office for filing and paid the filing fee; that Anderson and Lynch signed it as good friends of plaintiff's and because of their association with him and at his request. Upon this showing, plaintiff asked permission to amend the complaint by signing it for himself, and was denied that right.

It is first contended by plaintiff that there is no law in Arizona prohibiting assistants or deputies of the Attorney General from engaging in the private practice of law. The material portion of section 4–502, Arizona Code, 1939, reads:

"*Duties.*—The attorney-general shall: 1. Devote his entire time to the discharge of the duties of his office and not engage directly or indirectly in the private practice of law; . . . "

Section 12–202, Id. reads:

" '*Officer*' *includes deputy.*—Unless otherwise provided, each deputy of any state or county officer possesses the powers and may perform the duties attached by law to the office of the principal, and whenever the official name of any principal officer is used in law conferring power, or imposing duties, liabilities or prohibitions, it includes his deputies."

■■ Taken together, these two provisions of the statutes require the Attorney General and his deputies to devote their entire time to the discharge of their duties and forbid them from engaging in the private practice of law. Plaintiff claims, however, that the Code commissioner, in compiling and recodifying the laws in 1928, added, without authority, the words "or prohibitions" to the revised section 60 of such Code,

making it read as above (section 12–202). The 1928 Code, with such change, was regularly enacted by the legislature (*Ellery* v. *State,* 42 Ariz. 79, 22 Pac. (2d) 838) and whatever is in it must be treated as put there by that body.

We have said that, since the authority of the Code commissioner was, plainly, to collect and recast the laws by eliminating redundancies and simplifying the language, we would not give them a meaning different from the original unless it was clear that the legislature intended a change. If it appears the lawmaking body intended a change, we cannot ignore such intention. *In re Estate of Sullivan,* 38 Ariz 387, 300 Pac. 193; *Hunter* v. *Northern Arizona Utilities Co.,* 51 Ariz. 78, 74 Pac. (2d) 577. It is evident the legislature intended by the insertion of the words ''or prohibitions'' to extend the duties and disabilities under the law of the principal to the deputies, and we cannot ignore such intention.

Appellant next contends that Lynch was not a deputy Attorney General and that, therefore, he could sign the complaint. He bases this contention on the wording of section 59–112, Arizona Code 1939, reading:

''*Duties of attorney-general—Other counsel.*—The attorney-general shall be the legal advisor of the department [highway], and shall give such legal service as the commission [highway] or state engineer may require. He shall prosecute and defend in the name of the state all actions necessary to carry out the provisions of this chapter; provided, however, that upon request of the commission the attorney-general shall designate for such time and purposes as the commission may require, an attorney whose compensation shall be fixed by the commission and shall be a charge against the state highway fund.''

He says under the statute Lynch was special counsel to the highway department.

■ The powers conferred on the highway department to lay out and build public highways are governmental in their nature, and those exercising such powers and their legal advisors are functioning as agencies of the state and, whether paid out of the highway fund or the state's general fund, their source of compensation is public money. Lynch was appointed as an assistant Attorney General. He took the oath as such and filed it with the Secretary of State, as required by law. In court proceedings it appears he always signs his name as an assistant Attorney General.

■■ The above section recognizes that the Attorney General is the legal advisor of the highway department and specifically authorizes him to designate an attorney for such department. Such attorney is appointed by the Attorney General. He gets his authority to act from such officer. If it had been intended that such attorney should not be clothed with official authority, his employment doubtless would have been left to the highway department. We think the purpose of the statute was to give the department one regular advisor from the Attorney General's office to whom it could go for advice, rather than different counsel each time advice was needed. The advantages of such an arrangement are apparent.

The plaintiff next contends that the delay by defendants in raising the question of the right of Anderson and Lynch to sign the complaint and their recognition of these attorneys, in stipulations, in arguments of motions, in setting and resetting of the case for trial, waived their right to assert that the complaint was not signed by the plaintiff or a qualified attorney; that such omission is not jurisdictional but, at most, a formal defect or irregularity capable of correction by his signing the complaint *pro se* at the time the motion to dis-

miss was made, and that such amendment should have been allowed.

When this action was filed, the statute required that pleadings in civil actions be signed by the party or his attorney. It also provided that a party might appear in person or by an attorney at law. Sec. 3737, Rev. Code, 1928. The attorneys who signed plaintiff's complaint were licensed to practice law in Arizona and were members of the bar in good standing. They had the right to bring the action for plaintiff, sign his complaint and try the case, except for the prohibition contained in section 12–202, *supra*.

█ From a careful study of that section, we feel sure the legislature did not intend to prohibit the Attorney General and his deputies from engaging in the private practice of the law because they were disqualified. On the contrary, since they were the legal advisors of the state and its different departments, it may be assumed they were competent and qualified to practice law in all its branches. The main purpose of the law was to confine the Attorney General and his legal staff to the business of the state—a full-time job. The prohibition against their engaging in private practice was incidental to the main purpose and was inserted to assure no departure from the main purpose. If their "entire time" was devoted to their duties, there was no time left for the private practice. When the deputies assisted plaintiff in the drafting of the complaint and then signed their names to it, they did not violate the law prohibiting unlicensed attorneys from engaging in the practice but they did violate the law that required them to devote their "entire time" to their official duties.

The statute fixes no penalty for such violation. If, however, anybody is to be punished, it should be the person who trespasses the law and not his client. In

other words, the law is directed to the actor and not so much to the act.

In cases where unlicensed attorneys, or attorneys of another state without proper local recognition, have instituted actions or made appearances in violation of the law or rule of the court, the decisions as to what effect should be given their acts are not uniform but seem to turn largely upon what the result on the rights of the parties would be if the proceedings were vacated, or whether, if the proceedings are permitted to stand, any innocent party would be substantially harmed. In that connection consideration is always given to the time when objection was made. In *Sutherland* v. *International Insurance Company of New York,* 2 Cir., 43 Fed. (2d) 969, 971, the question was as to whether the Alien Property Custodian could appear by a solicitor of his own selection. The court, speaking through Justice Learned Hand, held he had no right to do so but stated the general rule, when the litigation was between private parties, to be as follows:

"While therefore there is no doubt in our mind that the suit when first filed was subject to dismissal because the plaintiff was not properly represented, it would, under most authorities, have been too late to raise the question after answer and at a hearing. The objection has generally been treated like incapacity to sue; its ground being that his attorney's lack of authority permits the plaintiff to play fast and loose with the defendant, holding him to the judgment if he wins, and repudiating it, if he loses. Courts have generally, however, insisted that the defendant must raise the point *in limine;* sometimes at the term at which process is served, and at any rate before answer. This in turn is because, if, being advised of his situation, the defendant is content with the hazard, he cannot later repudiate his acceptance. It is not necessary to do more than enumerate some of the many decisions which have so held, *King of Spain* v. *Oliver,* Fed. Cas. No. 7814; *Rogers* v. *Crommelin,* Fed. Cas. No. 12,009; *Rouiller* v. *A. & B. Schuster Co.,* (D. C.) 212 Fed. 348;

*Cockran* v. *Leister,* 2 Root (Conn.) 348; *Spaulding* v. *Swift,* 18 Vt. 214; *Norwood* v. *Dodge,* 215 Mass. 351, 102 N. E. 412 (by rule of court); *Upham* v. *Bradley,* 17 Me. 423 (semble); *Lucas* v. *Bank of Georgia,* 2 Stew. (Ala.) 147; *Chamberlain, Miller & Co.* v. *Abbott,* 152 Ala. 243, 44 So. 637 [126 Am. St. Rep. 30]; *Noble et al.* v. *Bank of Kentucky,* 3 A. K. Marsh. [Ky.] 262 (semble); *Gianakaris* v. *Hines,* 273 Pa. 21, 116 Atl. 524; *State* v. *Edwards,* 315 Mo. 209, 286 S. W. 25; *Mercier* v. *Mercier,* 2 Dall. (Pa.) 142, 1 L. Ed. 324; *State* v. *Harris,* 14 N. D. 501, 105 N. W. 621; *Indiana, B. & W. Ry. Co.* v. *Maddy,* 103 Ind. 200, 2 N. E. 574; *Rowland* v. *Gardner,* 69 N. C. 53. In *Dehn* v. *Dehn,* 170 Mich. 407, 136 N. W. 453, the rule was so far relaxed as to allow the point to be raised at trial, when the defendant first discovered it at that time. . . . ''

The facts in such cases are sufficiently analogous to the present situation to make the rule in them applicable here. In none of the cases we have examined was the client at fault. The courts therefore, generally speaking, have tried to protect the client who was so unfortunate as to have an attorney, for one reason or another, not legally entitled to represent him because of some statute or rule of court. Many of the cases are collated in *Schifrin* v. *Chenille Manufacturing Company,* 2 Cir., 117 Fed. (2d) 92, 93, and the grounds for the decisions stated, and we refer to that case as a source for a further statement and analysis of the rule in different situations. In that case, the defendant's appearance was ''entered by one not entitled to practice in that court'' (U. S. Dist. Ct., So. Dist. N. Y.). After stating the court rule, it was said:

''Since no penalty for violation of this rule, or other method of enforcement of it, is expressly provided, it may be fairly inferable that sanctions should be applied only against those to whom the rule is addressed and who themselves infringe it, i. e., those who, not being attorneys of the court, attempt to enter appearances and sign stipulations for parties. Such persons might be adjudged in contempt (*Heiskell* v. *Mozie,*

65 App. D. C. 255, 82 Fed. (2d) 861), enjoined from continuing practice (*Fitchette* v. *Taylor,* 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356), or acting in the case (*In re Looney,* D. C. W. D. Tex., 262 Fed. 209), or denied recovery of fees (*East St. Louis* v. *Freels,* 17 Ill. App. 339). . . . ''

If the motion to dismiss the complaint had been made any time before the statute of limitation had run against plaintiff's cause of action, in view of the fact that he is an attorney, learned in the law and the chief legal advisor of the state, we would have no hesitancy in enforcing the law against him by affirming the judgment of dismissal. He should not be regarded as an innocent client, because the inhibition was against him and his legal staff. When the motion was made, however, the statute had run and if the judgment is affirmed the plaintiff's cause of action is barred. Should that fact require a different decision from this court?

Every one is presumed to know the law. As a matter of fact, everyday observation and experience refute such presumption. The plaintiff and his attorneys should have known enough of the law, since the law is their vocation, to avoid the pitfall here encountered, but their mistake is indubitable evidence of their total unfamiliarity with this phase of the law. Counsel for defendants, in extenuation of their delay in making the motion to dismiss the complaint, at the argument contritely and humbly confessed that they did not discover the predicament plaintiff was in until their client pointed it out to them just before the filing of the motion. The above aphorism of the law, then, like all rules, has its exception even among members of the profession. If it appeared that plaintiff knew the law and wilfully disobeyed or ignored it, by employing members of his legal staff to bring and prosecute his action, the sanction of dismissal would not be too much, but everything points to his total lack

of knowledge of the existence of the law and under such circumstances we prefer to treat his mistake as "innocent" rather than wilful and, if he has a cause of action, give him a chance to prove it.

■ The grounds of the motion are not jurisdictional. The superior court had jurisdiction of both the subject matter and the parties. *Rouiller* v. *A. & B. Schuster Co.,* D. C., 212 Fed. 348; *North Laramie Land Co.* v. *Hoffman,* 27 Wyo. 271, 195 Pac. 988. The court and the parties acted for nearly two years as though there was an action pending for trial or other disposition on its merits. We prefer to treat the complaint as merely defective and therefore subject to amendment.

■ The tendency of all the courts, and definitely of this court, is not to bar the doors of justice, because of any error or defect in pleading his cause, to any person who complains that he has suffered wrong at the hands of another, especially when no substantial right will be lost or affected thereby. Our statutes on amendment of pleadings have always been liberally construed, *Union Auto Transportation Co.* v. *Mattingly,* 35 Ariz. 373, 278 Pac. 368, and our new rules of civil procedure provide "and leave shall be freely given [to amend] when justice so requires." Sec. 21–448, Arizona Code, 1939.

The judgment is reversed and the cause remanded with directions to reinstate the complaint and permit an amendment thereof by allowing the plaintiff to sign it *pro se,* on such terms as to the court may seem just.

LOCKWOOD, C. J., and McALISTER, J., concur.