164 P.2d 598

## CITY OF TUCSON v. TUCSON SUN-SHINE CLIMATE CLUB.
### No. 4792.

Supreme Court of Arizona.
Dec. 21, 1945.

Thos. J. Elliott, of Tucson, for appellant.

Clifford R. McFall, of Tucson, for appellee.

MORGAN, Judge.

For the fiscal year 1943-44, the City of Tucson, operating under a home rule charter, included and adopted in its annual budget an item of $17,500 for advertising purposes. From the previous annual budget it had on hand unexpended $3,792.08, leaving the net amount to be raised by taxation $13,707.92, of which $13,670.42 was collected during the year. On account of back taxes for prior years levied for advertising purposes, there was also collected during the fiscal year 1943-44 the sum of $710.92. The unexpended balance and the amount collected as back taxes were unencumbered, and the aggregate of these items, plus the taxes collected under the current levy, exceeded the amount of the budget item for advertising. For the fiscal year the total amount of advertising expenditures and obligations incurred by the city was the sum of $15,123.88. Of this total, $11,421.62 was paid, leaving a balance of $3,702.26, for which suit was brought by plaintiff (appellee here) as assignee. From a judgment in favor of plaintiff, the city appeals.

It is urged here, as it was in the trial court, that the court erred in entering judgment, for the following reasons: First, under the provisions of section 16-607, ACA 1939, the city is limited in making expenditures for advertising purposes during the fiscal year to one-twentieth of one per cent of its assessed valuation $24,087,590, or the sum of $12,043.79, and that therefore the judgment could not be for more than $622.17, it having already paid $11,-421.62. Second, under the provisions of the city charter and the law, the only money in the advertising fund available for

advertising expenditures was the amount actually collected for taxes during the fiscal year $13,670.42, and the court, in any event, was without power to enter a judgment for more than $2,248.80, the balance then remaining after deducting the payments mentioned above.

The determination of this controversy requires a consideration of the constitutional provision relating to home rule charters, various legislative measures, and certain sections of the charter itself.

Article 13, section 2, Arizona Constitution, provides in part: "Any city containing, now or hereafter, a population of more than three thousand five hundred may frame a charter for its own government consistent with, and subject to, the constitution and the laws of the state, * * *." Specific provisions are made for the preparation, recording and publication of the proposed charter. When ratified by a majority of the qualified electors of the city it is submitted to the governor, "and the governor shall approve it if it shall not be in conflict with this constitution or with the laws of the state. Upon such approval said charter shall become the organic law of such city. * * * Thereafter all courts shall take judicial notice of said charter."

It will be observed that such a charter is of constitutional origin. It does not exist subject to the will of the legislature. It is a constitutional grant and is usually referred to as a freeholders' or home rule charter. It may be amended only by the qualified electors of the city. All its provisions are valid and enforceable if consistent, not in conflict, with and subject to, the Constitution and the laws of the state.

Article 3, chapter 16, ACA 1939, originally adopted in 1912, provides for incorporation of cities, under home rule charters, in conformity to the Constitution. In addition to the constitutional features, the Legislature adopted chapter 11, section 4, Laws 1912, Special Session, now section 16-303, ACA 1939, in substantially the original form:

"*Charter to supersede inconsistent general laws.*—When the charter of such city has been framed, adopted, and approved according to the provisions of this article, and any provisions of such charter are in conflict with any law relating to cities containing a population of more than three thousand five hundred (3,500) inhabitants, in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail notwithstanding such conflict, and shall operate as a repeal or suspension of such law to the extent of such conflict, and such law shall not thereafter be operative as to such conflict; provided that such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum and other *general laws of the state not relating to cities.*" (Italics ours.)

In 1915 the Legislature enacted as section 1, chapter 16, Laws 1915:

"In addition to the powers already vested in cities and incorporated towns in this state by their respective charters and the general laws of the state, common councils or commissions in cities and incorporated towns shall have the power to appropriate annually from the general fund of the city or incorporated town an amount not to exceed one twentieth of one percent of the assessed valuation of the city or incorporated town for the purpose of encouraging immigration, new industries and investment in said city or incorporated town, and to print and distribute books, pamphlets and maps advertising the advantages of said city or incorporated town, and the common council may, in its discretion, pay said sum to the chamber of commerce, board of trade, or other commercial organization of said city or incorporated town to be expended for the purposes herein enumerated under the direction of the board of directors of said commercial organization."

In the 1928 compilation this section was revised, and now appears as section 16-607, A.C.A. 1939. It is substantially the same as originally enacted, except that the first part of section 1, "In addition to the powers already vested in cities * * * by their * * * charters * * *", is eliminated.

The freeholders' or home rule charter of the City of Tucson was adopted and approved in 1929, and the following sections in Chapter XIII are material here:

"Sec. 8. The Mayor and Council shall have the power to levy and collect taxes in addition to the taxes herein authorized to be levied and collected, sufficient to pay * * * for advertising the advantages of the City."

"Sec. 13. At the end of each fiscal year any and all amount or amounts, balance or balances, remaining unexpended in any budget item or items, account or accounts, fund or funds, other than funds for the payment of interest upon or redemption of City bonds, shall no longer be available for expenditure for the purpose or purposes for which budgeted, but shall be and become a part of Treasurer's balance on hand, and shall be deducted from the amount or amounts required to be raised by taxation for the ensuing year."

The effect of section 16-303 has been directly or indirectly considered by this court in a number of previous cases. In Clayton v. State, 38 Ariz. 135, 146, 297 P. 1037, 1041, we find this statement: "Supplementing section 2 of article 13 of the Constitution, the Legislature, in section 398 of the Revised Code of 1928, has provided that in case of conflict the charter provisions shall prevail over existing laws and shall operate as a repeal or suspension of such laws to the extent of such conflict, but 'that such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum and *other general laws of the*

*state not relating to cities.'* (Italics ours.) This recognizes the supremacy of the 'general laws of the state not relating to cities.' The Highway Code is such a law. It does not relate to cities, but to the public highways of the state generally."

On rehearing, 38 Ariz. 466, 468, 300 P. 1010, it was said: " * * * Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

Again, in Hislop v. Rodgers, 54 Ariz. 101, 115, 92 P.2d 527, 533, the following appears, in commenting on the rule of the Clayton case: "We have followed this rule in City of Phœnix v. Breuninger, 50 Ariz. 372, 72 P.2d 580, 583, holding in substance that where municipalities are given express power to legislate upon a certain subject, they may do so even though the same subject is covered by statewide law, ' * * * provided, always, of course, that such legislation did not contradict some rule laid down by the state.' In other words the municipal legislation cannot contradict the state law, but it may parallel it, *or even go beyond it,* so long as the two are not in conflict. * * *" (Italics ours.)

The Breuninger case referred to involved a city ordinance authorized by its charter, which imposed stricter regulations upon the sale of milk products than provided by the legislative act on the subject. It was held that the imposition of stricter regulations by the city than imposed by the general law did not constitute a conflict.

In Trigg v. City of Yuma, 59 Ariz. 480, 130 P.2d 59, 61, the claim was made that the city system of equalizing taxes was invalid as not conforming to the general law on the subject. The Legislature had provided for a system of equalizing city taxes by giving the power to the board of supervisors of the county, but the method was not exclusive. It was held that "if the legislature has the power under the constitution to provide that all cities and towns in the state shall have a uniform system of equalizing their property taxes" it had not exercised such power.

From the foregoing it will be seen that where a home rule city has power by its charter it may act in conformity with such power not only in matters of local concern, but also in matters of state-wide concern, within its territorial limits, unless the Legislature has appropriated the field, and directly or by necessary implication established a rule, beyond which the city may not go.

Does section 16-607, supra, limit the power of the defendant city in raising and expending money for advertising pur-

poses? In considering this question, it must be remembered that defendant's charter expressly provided for the raising and expenditure of funds for advertising purposes without limit. Chapter XIII, section 8, supra. It is our view, whether advertising be considered as a matter of local or general concern, that defendant is not limited by the provisions of section 16-607, for several reasons. It is evident from the original act, as adopted, that the Legislature never intended to appropriate the field of advertising insofar as charter cities are concerned. The terms of the original act confirm this by the opening sentence of the section: "In addition to the powers already vested in cities and incorporated towns in this state by their respective charters * * * shall have the power to appropriate * * *." We are required to consider the original act 'since we cannot assume that by the failure of the code commissioner to include the above provisions of the original section in the revision, it was thereby the intent of the Legislature to change the meaning of the original enactment. It is apparent that the foregoing was eliminated only in the interest of brevity. Estate of Sullivan, 38 Ariz. 387, 300 P. 193; Waara v. Golden Turkey Min. Co., 60 Ariz. 252, 135 P.2d 149, 149 A.L.R. 677; Conway v. State Cons. Pub. Co., 57 Ariz. 162, 112 P.2d 218; Nethken v. State, 56 Ariz. 15, 104 P.2d 159; Refsnes v. Oglesby, 50 Ariz. 494, 73 P.2d 90.

■■ It was obviously never intended as a limitation on the powers granted to a city by its charter, either then or thereafter adopted and approved. We think the main purpose of the act was to make advertising a public purpose. At that time the promotion by municipalities of trade and business interests, for which taxes could be levied, was not considered a public purpose. McQuillin, Min. Corp., 2d Ed., vol. 6, p. 296, § 2532, citing Manning v. City of Devils Lake, 13 N.D. 47, 99 N.W. 51, 65 L.R.A. 187, 112 Am.St.Rep. 652. Nor does the act as originally adopted, and as now existing, evidence an intent on the part of the Legislature to treat advertising of resources upon a state-wide basis, or of general public concern, because the amount provided by the section is "for the purpose of encouraging immigration, new industries and investment in said city or incorporated town." The grant is confined to a purely local purpose, without regard to the overall benefit to the public or state as a whole. It follows, therefore, under the authorities above cited, section 16-607 is not a limitation on the city insofar as expenditures for advertising are concerned.

■ Furthermore, the section must be considered with section 16-303, supra. Under this section, if the provisions of section 16-607 conflict with the charter right, the law is suspended to the extent of the conflict, since it would be a law relating to cities of defendant's class and pertains only to a matter of local concern of a proprietary character. Under section 16-303, charter provisions consistent with and subject to the state Constitution and not in

conflict therewith, or with other general laws not relating to cities, are valid. The provisions of section 8, Chapter XIII, City of Tucson charter, are not affected by any constitutional inhibition. It is consistent with and subject to the laws of the state, since upon its adoption and approval it, by virtue of section 16-303, supersedes and makes ineffective the provisions of section 16-607. By the Legislature's own fiat, the act has no more force in this situation than if it had never been enacted.

What we have just said rests on the basis that advertising a city's advantages is an activity of local concern. It is acting in its proprietary rather than its governmental capacity. In advertising, the city is not acting as the agent of the state. The rule has been announced in Luhrs v. City of Phœnix, 52 Ariz. 438, 83 P.2d 283, 285, that if an activity is carried on by a municipality as the agent of the state it is of general or public concern, but it is of local concern if exercised by the city in its proprietary capacity: "* * * The courts differ as to what activities of the city are of local interest or concern and therefore free from legislative interference. Some of such activities are so noticeably local or state-wide that they are easily assignable, while in others the line of demarcation is very difficult of discernment, because the activity may be neither predominantly local nor state-wide but may partake of both. Whether it is one or the other in such case depends upon whether the activity is carried on by the municipality as an agent of the state. If it is, it is of general or public concern. If it is exercised by the city in its proprietary capacity, it is a power incidental to home rule. State [ex rel. Gebhardt] v. City Council of Helena, 102 Mont. 27, 55 P.2d 671. * * *"

We do not say that the Legislature might not provide for a general plan of advertising the resources of the state, and require all municipalities to conform to such plan, and thus establish a policy relating to advertising which would be of state-wide concern. Until this is done, however, it would seem that the promotion of the city's resources through advertising or otherwise is purely a matter of local concern. The extent to which a municipality may desire to go in encouraging immigration, new industries and investment within its boundaries is something that its inhabitants should have the power to decide. The people of one city may be perfectly satisfied with conditions as they are, while those of another municipality may wish to make every effort to promote and expand the population, activities and business of the city. It is unquestionably a purely municipal affair. This being so, the provisions of section 16-607 are obviously subservient to the charter both under the law, as we have already pointed out, and also under the Constitution. This court, and most courts speaking upon the subject, have held that a home rule city deriving its powers from the

Constitution is independent of the state Legislature as to all subjects of strictly local municipal concern. Luhrs v. City of Phœnix, supra; Clayton v. State, supra; Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N.W. 643; Axberg et al. v. City of Lincoln, 141 Neb. 55, 2 N.W.2d 613, 141 A.L.R. 894; 37 Am.Jur. 715-716, § 106, Municipal Corporations.

 Frankly, we do not regard the second contention with favor. We are unable to see the force of appellant's argument that because unexpended funds budgeted in a prior year are no longer available for expenditure under that budget and revert to and become part of the treasurer's balance on hand, they are not available and may not be used in making up and become a part of the succeeding budget fund. The City of Tucson is subject to the general budget law. American-LaFrance etc. Corporation v. City of Phœnix, 47 Ariz. 133, 54 P.2d 258; City of Phœnix v. Kidd, 54 Ariz. 75, 92 P.2d 513. Under the charter, Chapter XIII, section 13, these items do become a part of the treasurer's balance and are deducted from the "amount or amounts required to be raised by taxation for the ensuing year." This does not mean, however, that these balances are not available as budget funds and for expenditures thereunder for the ensuing year. The particular amounts mentioned, the balance from the previous budget and the back taxes are admitted to be unencumbered. By this admission, we understand that equivalent sums on hand were available which, with the anticipated taxes, would produce a total amount to pay for all proposed expenditures under the 1943-44 budget. The allegations of the complaint, which were admitted, disclose that the annual budget was adopted in the usual way, the advertising item being only a part of the whole.

 Section 73-502, and section 73-503, A.C.A. 1939, as amended by chapter 38, Laws 1943, govern the proceedings of the city in making budgets and expenditures. These sections are not entirely clear. But, as we said in Bank of Lowell v. Cox, 35 Ariz. 403, 279 P. 257, 261: "If statutes be ambiguous in their language, they must be construed in view of the purposes they are intended to accomplish and the evils they are to remedy." This court has repeatedly said the purpose of the budget law is to require all counties and municipalities to pay as they go, to place them on a cash basis. Bank of Lowell v. Cox, supra; Refsnes v. Oglesby, supra; City of Phœnix v. Kidd, supra; American-LaFrance etc. Corporation v. City of Phœnix, supra. It is obvious that the budget law was adopted for the purpose not only of advising the taxpayers of anticipated expenditures but also the fixing of a rate which would produce in taxes as nearly as possible the exact amount required to pay for the anticipated expenses of that particular year. In other words, to prevent the assessment and collection of taxes beyond the requirements of

the taxing unit. While the budget sections do not in terms say that balances from previous budgets shall be available for payments under the new budgets, this is necessarily implied. If this were not so, the balances would never be expendable and the rate of tax would have to produce the full amount of the budget requirements regardless of the amount of unencumbered funds the county or municipality might have on hand for the payment of the proposed expenditures. This apparent discrepancy in 'the statute has been corrected by an amendment to section 73-505, A.C.A. 1939, by chapter 98, Laws 1945, section 4. However, since the adoption of the budget law, all municipalities have, in making their budgets, taken into consideration the balances from previous budgets and back tax collections. These items have always been considered as available for the payment of obligations under the current budget. Therefore, upon the adoption of the budget, we must assume, under the allegations of the complaint and the admissions, that the balances on hand at the time of the adoption of the budget, plus taxes levied and income from other sources, produced an aggregate amount to meet the proposed expenditures. The adoption of the budget allocated $17,500 of this amount to the advertising fund. This being so, there was actually in the advertising fund an amount more than sufficient to meet the total expenditures. This is fully in accordance with the views heretofore expressed in Refsnes v. Oglesby, supra. The judgment is not void as validating expenditures where no money is available for payment.

The judgment is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.