196 P.2d 477

MAYOR & COMMON COUNCIL OF CITY OF PRESCOTT v. RANDALL.

No. 5053.

Supreme Court of Arizona.

July 15, 1948.

E. C. Locklear, of Prescott, for appellants.

Byrne & Byrne, of Prescott, for appellee.

LaPRADE, Justice.

This is an appeal from a judgment of the superior court invalidating Ordinance No. 350 of the city of Prescott, Arizona, which ordinance, adopted October 25, 1937, attempts to limit the number of liquor licenses which may be issued within the corporate limits of the city. The city for its authority to enact the ordinance in question looks to its charter. Prescott, since its incorporation in 1883, has existed and operated by virtue of the charter granted to it by the territorial legislature in that year, being Act. No. 37, Laws 1883, entitled "An Act to incorporate the City of Prescott, to define its limits and rights, to specify its privileges and powers, and provide for an efficient government for the same." By section 4 of article 2 of the act the mayor and common council are specifically granted the power to provide by ordinance "for the licensing, regulating, restraining, suppressing and prohibiting, or either, any and all hawkers, peddlers, * * * gambling houses, * * * bawdy houses, *the sale of spirituous or malt liquors in quantities less than one quart, by keepers of saloons or any other person or persons;* houses of prostitution or assignation, * * * and if licensed, to fix the amount of license tax thereon. * * *." (Emphasis supplied.)

It is the contention of the appellee that the licensing and regulating of the traffic in intoxicating liquors has been fully covered by the legislature in chapter 72, A.C.A. 1939, and that by such legislation the field has been pre-empted. By section 72-102, there is created the department of liquor licenses and control and the office of superintendent of such department. The general principles involved are elaborately considered and discussed in Clayton v. State, 38 Ariz. 135, 297 P. 1037; Northeast Rapid Transit Co. v. Phoenix, 41 Ariz. 71, 15 P.2d 951; State v. Anklam, 43 Ariz. 362, 31 P.2d 888; State v. Jaastad, 43 Ariz. 458, 32 P.2d 799; Highland Park Realty Co. v. Tucson, 46 Ariz. 10, 46 P.2d 641; Keller v. State, 46 Ariz. 106, 47 P.2d 442; Phoenix v. Drinkwater, 46 Ariz. 470, 52 P.2d 1175; American-La France, etc., Corp. v. Phoenix, 47 Ariz. 133, 54 P.2d 258; City of Phoenix v. Breuninger, 50 Ariz. 372, 72 P.2d 580; Home Owners' Loan Corp. v. Phoenix, 51 Ariz. 455, 77 P.2d 818; Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P.2d 283; City of Phoenix v. Kidd, 54 Ariz. 75, 92 P.2d 513; Hislop v. Rodgers, 54 Ariz. 101, 92 P.2d 527; Trigg v. City of Yuma, 59 Ariz. 480, 130 P.2d 59; City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598; City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon, Inc., 67 Ariz. 330, 195 P.2d 562.

[1] The rule established in all of these cases is that a charter city is sovereign in all of its "municipal affairs" where the power attempted to be exercised has been specifically or by implication granted in its charter. As above pointed out, the charter of the city of Prescott specifically grants to the municipality the power to license, regulate, and tax "the sale of spirituous or malt liquors in quantities less than one quart." The question now is: Is there any limitation upon the exercise of this power? By section 16-303, A.C.A. 1939, any laws relating to cities having a charter in force at the time of the adoption and the approval of such charter are repealed or suspended insofar as they conflict with charter provisions, "provided that such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum *and other general laws of the state not relating to cities.*" (Emphasis supplied.)

In practically all of the foregoing cases the effect of section 16-303, supra, has been directly or indirectly considered by this court. In Clayton v. State, supra, [38 Ariz. 135, 297 P. 1041] we find this statement: "Supplementing section 2 of article 13 of the Constitution, the Legislature, in section 398 of the Revised Code of 1928 (section 16-303, A.C.A. 1939), has provided that in case of conflict the charter provisions shall prevail over existing laws and shall operate as a repeal or suspension of such laws to the extent of such conflict, but 'that such charter shall be consistent with and subject

to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum *and other general laws of the state not relating to cities.'* (Italics ours.) This recognizes the supremacy of the 'general laws of the state not relating to cities.' The Highway Code is such a law. *It does not relate to cities, but to the public highways of the state generally."* (Emphasis supplied.)

On rehearing, 38 Ariz. 466, 300 P. 1010, it was said: " * * * It is not a novelty in the law to find the same act punishable by statutes and by city ordinance. Indeed it is quite common for the two jurisdictions to legislate concurrently on the same subject. Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. *Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."* (Emphasis supplied.)

In Hislop v. Rodgers, supra, [54 Ariz. 101, 92 P.2d 533] we had occasion to comment on the rule laid down in the Clayton case, as follows: "We have followed this rule in City of Phoenix v. Breuninger, 50 Ariz. 372, 72 P.2d 580, 583, holding in substance that where municipalities are given express power to legislate upon a certain

subject, they may do so even though the same subject is covered by statewide law, ' * * * provided, always, of course, that such legislation did not contradict some rule laid down by the state.' In other words, the municipal legislation cannot contradict the state law, but it may parallel it, *or even go beyond it,* so long as the two are not in conflict. * * *" (Emphasis supplied.)

By way of summation of the rule, Justice Morgan, speaking for this court in City of Tucson v. Tucson Sunshine Climate Club, supra, said [64 Ariz. 1, 164 P.2d 601]: "From the foregoing it will be seen that where a home rule city has power by its charter it may act in conformity with such power not only in matters of local concern, but also in matters of state-wide concern, within its territorial limits, unless the Legislature has appropriated the field, and directly or by necessary implication established a rule, beyond which the city may not go."

Counsel for the city of Prescott earnestly contends that the rule laid down in the Clayton case and in the cases following it has no application to the city of Prescott for the reason that the legislature in enacting chapter 72 relating to spirituous liquors in section 72-112 specifically reserved to incorporated cities and towns the power to license, tax, and regulate the sale of spirituous liquors. The section relied upon reads as follows: "72-112. *Incorporated cities and towns authorized to regulate*

*the manufacture, sale, and disposal of spirituous liquors.*—In addition to the license, taxes, and regulations herein provided for, incorporated cities and towns, shall have the power to license, tax, and regulate the manufacture, sale, possession, and disposal of spirituous liquors, within their corporated limits, providing the foregoing provisions shall not apply to wholesalers licensed under section 5 (§ 72-110); provided this section shall not be construed to give to incorporated cities and towns, the power to prohibit the manufacture, sale, and disposal of intoxicating liquors."

The contention that the specific grant of power to incorporated cities and towns to license, tax, and regulate the sale and disposal of spirituous liquors presents a difficult question. If we are to give a literal interpretation to the language of this section it would seem that the position of appellant is well taken for the section specifically and unambiguously says "In addition to the license, taxes, and regulations herein provided for, incorporated cities and towns, shall have the power to license, tax, and regulate the manufacture, sale, possession, and disposal of spirituous liquors, within their corporated limits, * * *."

In Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236, 238, there was presented for determination whether or not the superintendent of liquor licenses and control of the state of Arizona was a proper and necessary party to an appeal to the superior court from an order of the superintendent denying the issuance of a license. The argument there made was that the superintendent was a quasi-judicial officer or judge and had no interest in the appeal. We disposed of this contention by saying:

" * * * We conclude that the superintendent is the real party defendant in interest for the reason that the legislature, in creating the Department of Liquor Licenses and Control, intended to create and establish state-wide control over the traffic in intoxicating liquors. The need of its regulation and control is undisputed. In a search for a system of effective, impartial, and uniform regulation and control of this traffic, our legislature first enacted Chapter 76, Sess.Laws 1933, then Chapter 46, Sess.Laws 1935, then later Chapter 64, Sess.Laws 1939, being Chapter 72, A.C.A. 1939. This system is a departure from that which had long existed here prior to the advent of national prohibition. Then the regulation and control of every phase of the liquor traffic was vested exclusively in local governing bodies. Running through the entire act is the central idea that the traffic in intoxicating liquors is a problem that is state-wide; and correspondingly that only state supervision and control can adequately cope with it. * * *

"The only remnant of local participation in the administration of the liquor traffic is contained in section 72-105, A.C.A. 1939. This section specifically provides that notice of the application for a liquor license must be noticed on the premises, 'with a

statement requiring any person opposed to the issuance of the license to file his written objections with the clerk.' The section further provides that:

" '* * * The governing body of the city or town, within five (5) days after the expiration of the time for filing objections, shall meet and *consider the application* and *any objections filed.* (Italics ours.)

" 'It shall then enter an order approving or disapproving the issuance of the license, and shall file a certified copy thereof with the superintendent. If disapproved, a statement of the reasons therefor shall be attached to the order.

* * * * * *

" '(d) Upon receipt of an application for a spirituous liquor license, the superintendent shall place the same on file until the expiration of the time fixed for the certified order by the governing body of the city or town or the board of supervisors, and shall consider such order together with other facts in his possession relating to the qualifications of the applicant.'

"This section recognizes that in the overall administration and control of the traffic in intoxicating liquors, the residents of each community have an interest in the premises, and that their legally elected representatives likewise have an interest that must be consulted. Only their advice and recommendations are sought. No provision for appeal is given to the citizen protestants ·from the order of the local governing body recom-mending or ·disapproving the issuance of a license. Nowhere is there any specific provision authorizing citizen protestants to appear before the superintendent. In fact, there is no provision in the statute for any hearing to he held by or before the superintendent. The statute merely provides that the superintendent shall ·consider the recommendation of the local governing body together 'with other facts in his possession relating to the qualifications of the applicant.' "

Now that section 72-112 has been called to our attention, frankness compels us to admit that the following statement appearing in the Lane case, to wit: ·"The only remnant of local participation in the administration of the liquor traffic is contained in section 72-105, A.C.A.1939." is a shocking misstatement, not in its effect but in the bald statement that there are no other provisions in the code purportedly empowering incorporated cities and towns to participate in the regulation and sale of spirituous liquors.

■ We are still of the opinion that the previous analysis that we made of chapter 72, relating to spirituous liquors and the duties of the superintendent of the department of liquor licenses and control, is correct. A more extended analysis of the various provisions of the chapter we feel conclusively demonstrates that the legislature, in creating the department of liquor licenses and control, intended to create and establish state-wide control over the traffic

in intoxicating liquors. It is a complete and comprehensive code. There admittedly must be regulation because of the many inherent evils attending the traffic and the abuses arising therefrom when not regulated. We do not feel it necessary to analyze all of the sections but will refer to a few which we feel support our judgment.

Section 72-105 is analyzed in the quotation from the Lane case, supra.

Section 72-108 provides that the superintendent shall issue a spirituous liquor license only upon satisfactory showing of the capability, qualifications, and reliability of the applicant, and that *the public convenience requires and will be substantially served by such issuance*. We feel that the full import of this section can be gained only by setting it out at length.

"72-108. *Issuance of licenses.*—(a) The superintendent shall issue a spirituous liquor license only upon satisfactory showing of the capability, qualifications, and reliability of the applicant, and that the public convenience requires and will be substantially served by such issuance.

"(b) A separate license shall be issued for each specific business, and each license shall specify: 1. the particular spirituous liquors which the licensee is authorized to manufacture, sell, or deal in; 2. the place of business for which issued, and, 3. the purpose for which the liquors may be manufactured or sold. The license shall be to manufacture, sell, or deal in spirituous liquors only at the place and in the manner provided therein.

"(c) Any spirituous liquor license shall be transferable as to the person licensed or as to any location within the same county, upon payment of a transfer fee of twenty-five dollars ($25.00) and after application in the manner provided for original application for a license. The transferee shall have the qualifications required of an original applicant. No tranfer shall be made while any charge for violation of this act or a rule or regulation of the superintendent is pending, and no transfer as to location shall be made unless it is shown to the satisfaction of the superintendent that the public convenience requires and will be substantially served thereby."

Section 72-109 relates to the revocation and suspension of licenses, and authorizes the superintendent to suspend and revoke any license for violation of or noncompliance with "1. any provision of this act or of law; 2. any rule or regulation issued pursuant to this act, or, 3. any condition of the license."

In addition to these statutory provisions the superintendent has adopted some 47 rules and regulations in a further attempt to bring about a uniform and complete regulation of the industry and of every licensee in the state. We shall not attempt to analyze all of these regulations but will observe that they are extensive and far-reaching. These regulations deal with

sanitation, the licensee's equipment, trucks, cracked or chipped glasses and dishes, health of employees, and even provide in subsection 7 of regulation 38: "Operators and employees must, during working hours, be clothed in clean outer garments; finger nails and hands scrupulously clean."

It is the contention of appellants that the legislature in enacting section 72-112 "gave full authority to incorporated cities to regulate the sale and disposal of spirituous liquors, provided only that the sale thereof shall not be prohibited altogether." They quote from many cases construing statutes which confer the right to license, tax, and regulate the traffic in intoxicating liquors. These cases establish the principle that the right to regulate includes the power to determine who are suitable persons to entrust the business to; the places where it may be conducted; the number of licenses that will be issued; and the power to direct, rule, govern, method,-ize, arrange, and restrain. These principles are enunciated in Thielen v. Kostelecky, 69 N.D. 410, 287 N.W. 513, 124 A.L.R. 820; State v. City Council of City of Libby, 107 Mont. 216, 82 P.2d 587; Perry v. City Council of Salt Lake City, 7 Utah 143, 25 P. 739, 998, 11 L.R.A. 446; and State v. Common Council of City of Northfield, 94 Minn. 81, 101 N.W. 1063.

■ Under the ordinance (in question) the city claims the power to license; to limit the number of licenses; that licenses shall not lapse so long as the existing business shall be continuously conducted by the holder of such license or his transferee to whom like license may be issued by the Mayor and common council, and shall remain uncancelled and unrevoked. The ordinance also provides that in the event any license is revoked it shall not be again issued or renewed. It is all too apparent that the city by this ordinance is attempting to assert a right to license, that is, to determine the capability, qualifications, and reliability of any applicant for a license. It further asserts the right to pass upon and determine whether the public convenience requires and will be substantially served by the issuance of any license. These prerogatives, by the sections of the statutes that have heretofore been analyzed, have been specifically and not in general terms lodged in the superintendent of the department of liquor licenses and control. The provisions of section 72-105 relating to the application to secure a license (notification to the city clerk; posting of notice of the application on the premises; hearings by the town council; the order of the town council approving or disapproving the issuance of a license and its recommendation to the superintendent) are all nullities if the city has the power to determine whether the public convenience requires and will be substantially served by the issuance of a license, and has the power to determine who are suitable persons to entrust the business to, the number of licenses that will be issued, and to direct,

rule, govern, methodize, arrange, and restrain the business. That portion of section 72-112 which authorizes incorporated cities and towns to license and regulate the liquor traffic is utterly inconsistent and cannot be harmonized or reconciled with the general spirit and purpose of the entire chapter relating to spirituous liquors.

It is a general rule of statutory construction that effect is to be given if possible to every paragraph and section of a legislative act, and if they seem to be in conflict they must be harmonized if possible. Arizona Eastern R. Co. v. Matthews, 20 Ariz. 282, 180 P. 159, 7 A.L.R. 1149. Another general rule is that where a part of a statute is susceptible to two constructions that construction should be adopted which is consistent with the general import of the statute. Street v. Commercial Credit Co., 35 Ariz. 479, 281 P. 46, 67 A.L.R. 1549. Another fundamental rule of statutory construction is that it is the duty of the court to sustain and uphold statutes rather than to ignore or defeat them, and to give them operation if the language will permit instead of treating them as meaningless. Coggins v. Ely, 23 Ariz. 155, 202 P. 391. Section 72-112 is not ambiguous. It specifically grants to incorporated cities and towns the power to license, tax, and regulate the traffic in intoxicating liquor. In Industrial Comm. v. Price, 37 Ariz. 245, 292 P. 1099, we held that an unambiguous statute should not be interpreted but should be enforced according to its clear language. To authorize cities and towns to regulate the liquor traffic would emasculate the entire state liquor code and create an absurd and ludicrous situation. In Keller v. State, supra, appellant had been convicted under an ordinance of the city of Phoenix making it an offense to be guilty of reckless driving. This court held that the ordinance was invalid on the theory that the legislature had withdrawn from all municipalities the right to regulate on the subject of reckless driving under the theory of the Clayton case, supra. It was contended that the legislature had expressly excluded all highways in incorporated cities of the character of Phoenix from the provisions of the highway code. Section 1687, Revised Code of Arizona 1928, declared what were to be considered public highways subject to provisions of the highway code. The section then contained this proviso: "* * * provided, that no portion of a public highway within the limits of an incorporated city or town having a population of more than twenty-five hundred shall come under the provisions of this chapter except as specifically provided for herein."

The court in disposing of this contention analyzed the highway code and its various provisions as it did in the Clayton case, supra, and demonstrated that it was the intention of the legislature to enact a comprehensive code and to regulate the use of all the streets and highways in the

state. The proviso that the highway code had no application to incorporated cities and towns having a population of more than 2,500 was just as specific and unambiguous as the language contained in section 72-112 with which we are concerned. It was the contention of the state in the Keller case that full effect should be given to the proviso. In disposing of the construction contended for by the state, this court said [46 Ariz. 106, 47 P.2d 447]:

"* * * Such a construction would introduce utter chaos into the regulation of motor traffic in the state of Arizona, a subject which more than almost any other demands increasingly uniform and rigid regulation. It seems to us that to attribute to the Legislature an intent to reach such a result is as absurd as it would be disastrous. It is a universally recognized rule of statutory construction that the intent of the Legislature is the vital test in the construction of statutes, and that all rules of construction are merely meant as aids to determine such intent.

"It is also almost universally held that when the literal language of a statute will result in an absurdity, an impossibility, or a meaning which, from the general context of the statute, is clearly at variance with the legislative intent, courts may and will alter, modify, or supply words to the statute in order to give effect to the manifest intention of the Legislature. (Citing cases.)".

We, therefore, conclude that the attempted delegation of authority to incorporated cities and towns to regulate the manufacture, sale, possession, and disposal of spirituous liquors within their limits is invalid for the reason that to give it full effectiveness would result in an absurdity and is clearly at variance with the whole theory of state control as evidenced by all of the provisions of the code relating to spirituous liquors.

Section 72-112 was first adopted as section 7 of chapter 46, Session Laws 1935, after this court had determined in Barrett v. State, 44 Ariz. 270, 36 P.2d 260, that the legislature, in enacting the 1933 liquor code, had not occupied the field, and that the matters contained in the liquor code were not of state-wide concern. In Stanton v. Superior Court, 55 Ariz. 514, 103 P. 2d 952, the court had before it for consideration the effect of what is now section 72-108, which provided that the superintendent shall issue a spirituous liquor license only upon a satisfactory showing that the public convenience requires and will be substantially served by the issuance of such license. The court held that the legislature in enacting the liquor code had not intended to establish a regulated monopoly, and that the granting of liquor licenses was a matter of discretion in the licensing body, subject to review for abuse only. In passing, the court observed that the 1939 liquor code was an attempt on the part of the legislature to establish a complete, general

code regulating the sale of intoxicating liquor. In the 1939 code there was no attempt to amend section 72-112, which was practically the only section retained without amendment from the 1935 code. By section 15 of chapter 64, Session Laws 1939 (liquor code of 1939) it is specifically provided that "* * * all laws and parts of laws in conflict herewith are hereby repealed." As pointed out, the regulatory features of section 72-112 are inconsistent and in conflict with the regulatory provisions of the 1939 liquor code, therefore, so much thereof was repealed by said section 15 of chapter 64, supra.

The right to exact an occupational tax is purely a matter of local concern. In this behalf we said in Barrett v. State, supra [44 Ariz. 270, 36 P.2d 261]: "* * * It is plain that the securing of revenue for a city is peculiarly and emphatically a matter of local concern, and unless the manner in which this is done is not authorized by its charter, or is in conflict with the general law, the mere fact that the state may seek revenue from the same source and in the same manner does not make the common source of revenue so purely a subject of state wide concern that the city cannot also secure funds therefrom. The charter of Tucson expressly grants that city the right to secure revenue by a license tax on any kind of business whatsover, and to provide for the manner of enforcing its payment. We see nothing in the ordinance which violates the rule laid down in the Clayton case."

We are of the opinion and so hold that the city of Prescott may license and tax any person who has been licensed to deal in intoxicating liquors by the superintendent of the department of liquor licenses and control, but that it may not refuse to issue a city license or limit the number of licenses, such being the sole province of the superintendent, subject to the county quota limitations contained in section 72-107, as amended by chapter 114, Sessions Laws 1941. The right of the city to exact a license tax or occupational tax was not repealed by section 15 of chapter 64, supra, and is preserved by the severability provision contained in section 72-117 which reads as follows: "If any part of this act shall for any reason be adjudged by a court of competent jurisdiction to be invalid, the remainder thereof shall not thereby be invalidated, impaired, or affected."

The denial to the city of the right to regulate the manufacture, sale, possession, and disposal of spirituous liquors should not be held to impair or invalidate the right of the city to tax the manufacture, sale, possession, and disposal of spirituous liquors.

For the foregoing reasons the judgment of the lower court invalidating Ordinance No. 350 of the city of Prescott is hereby affirmed.

STANFORD, C. J., and UDALL, J., concur.