242 P.2d 554

HULSEY et al. v. LA MANCE et ux.
No. 5447.

Supreme Court of Arizona.
April 7, 1952.

John C. Gung'l, of Tucson, for appellants.

Beumler & Beumler, of Douglas, for appellees.

STANFORD, Justice.

On June 14, 1948, W. W. LaMance, appellee, filed and recorded a laborer's lien for $7,000 against certain properties of the Southern Arizona Oil Company and M. D. K. Fitzwater and wife. After a long and complicated series of pleadings trial was held to foreclose the lien. The lower court affixed the lien on the properties as prayed. The Kidd McCoy Oil Company, the successor in interest of the Southern Arizona Oil Company, and Nellie Fitzwater, now Nellie Fitzwater Hulsey, both individually and as administratrix of her deceased husband's estate, now prosecute this appeal.

M. D. K. Fitzwater was an oil operator engaged in drilling an oil well near the town of San Simon, Arizona, during the years 1945 to 1948. W. W. LaMance was employed by Fitzwater as drilling superin-

tendent at the salary of $500 per month, plus expenses. In the latter part of 1946, the Southern Arizona Oil Company took over the drilling operations and Fitzwater was elected vice president and general manager. LaMance continued on as drilling superintendent after the change in ownership and received his pay checks from the Southern Arizona Oil Company until February 1, 1947 when the company became insolvent. LaMance contends he was not discharged but was paid in cash for his services by Fitzwater for the period between April 1, 1947 and June 1, 1948. No further drilling has been done on the well since the company became insolvent. There is no evidence to establish when Fitzwater was acting as general manager of the company and when he was acting in his own personal capacity.

■ As appellants question the sufficiency of the pleadings and the jurisdiction of the lower court to hear the cause, it will be necessary to review the pleadings in some detail. This action was originally commenced by the filing of three separate complaints against LaMance and others. The first complaint named Fitzwater and his wife as plaintiffs, the second added the Southern Arizona Oil Company as plaintiff and the third was the same as the first. Each of the three complaints were signed by Fred Blair Townsend and Terrance A. Carson as attorneys for plaintiffs. Upon motion of the defendants the actions were consolidated and defendants filed their answer in which LaMance set up his lien and prayed for foreclosure. Shortly thereafter it was stipulated that the actions be dismissed with prejudice and that the claim of LaMance be treated in all respects as a suit for the foreclosure of the lien. It was further stipulated that the *plaintiffs* M. D. K. Fitzwater, or his estate, and Nellie Fitzwater should have twenty days in which to answer. This stipulation was signed by B. G. Thompson as attorney for *plaintiffs,* Henry W. Beumler as attorney for defendants, and by Nellie Fitzwater, both individually and as administratrix of her deceased husband's estate. It will be noted that this stipulation was not signed nor authorized by anyone purporting to act for the Southern Arizona Oil Company. Nellie Fitzwater, individually and as administratrix, then filed a reply to the allegations in LaMance's answer. At this point, B. G. Thompson withdrew as *attorney of record for plaintiffs.* The next material pleading is a motion on behalf of the Southern Arizona Oil Company asking for dismissal of the foreclosure action on the ground of lack of jurisdiction. This motion was signed by John F. Molloy, an attorney. Affidavits were filed by the president and secretary of the Southern Arizona Oil Company to the effect that the company had never retained the law firms of Knapp, Boyle, Bilby & Thompson, Townsend & Jenckes, and Terrance A. Carson to bring action against LaMance or anyone else and had never authorized anyone to bring suit in

the corporate name. B. G. Thompson filed an affidavit stating that he had at one time represented the Fitzwaters in the action but that *he had never been authorized to represent the Southern Arizona Oil Company nor did he purport to act for the corporation.* An affidavit was filed by Fred Blair Townsend to the effect that he had been retained to bring suit for the company by Fitzwater, who had been clothed with such indicia of authority by the Southern Arizona Oil Company that he, Townsend, had no cause to question his powers. A study of the minute entries does not disclose a ruling on the Southern Arizona Oil Company's motion to dismiss. The Findings of Fact, however, state that Fitzwater had the authority to engage attorneys to prosecute actions on behalf of the Southern Arizona Oil Company. In effect therefore the motion to dismiss was denied. The trial was held on the theory that the Southern Arizona Oil Company was in court and represented by Mr. Gungl, appellants'. attorney. As there is controverting evidence on the issue raised by the above stated motion, the denial thereof will not be disturbed.

Having found that the Southern Arizona Oil Company was a plaintiff in one of the three original complaints, we must next determine the effect of the stipulation entered into "between the parties" whereby the original actions were dismissed with prejudice and LaMance's answer treated as a lien foreclosure suit. It is apparent as there is no conflicting evidence, that the Southern Arizona Oil Company did not enter into or authorize the stipulation. B. G. Thompson did not purport to act for the company and the Fitzwaters are the only plaintiffs named therein. It appears, therefore, that the complaint in which the company was named as plaintiff was still pending before the court. The lien foreclosure issue was the crux of the suit. Upon that premise we base our holding that the Southern Arizona Oil Company was rightfully before the court at the trial of this cause and that the court had jurisdiction over it. It appears from the transcript of the proceedings that Mr. Gung'l filed a motion immediately prior to the trial wherein he asked to be substituted as attorney of record for the Southern Arizona Oil Company. Although that motion is not before us in the record on appeal, Mr. Gung'l, at the trial, did not deny that he had filed it as attorney for the company. It necessarily follows that the Southern Arizona Oil Company was present and represented by counsel at the trial. The remaining pleadings are answers and motions by the third party defendants. Having found the court had jurisdiction over the parties we will now determine the lien issue.

We must first determine if the services performed by LaMance are lienable. Section 62–201, A.C.A.1939, states: "Every person who may labor or furnish materials, machinery, fixtures or tools to be used in the construction, alteration or

434

repair of any building, or other structure or improvement whatever, shall have a lien on the same for the work or labor done or materials, machinery, fixtures or tools furnished, whether said work was done or articles furnished at the instance of the owner of the building, or improvement, or his agent. * * * "

LaMance testified, concerning the nature of his labor, as follows:

"Q. You can tell what you did but not what you were told to do. A. All right, I stayed out there and as people would come in that wanted to buy acreage and so forth in the company which they were selling to drill the well with, I would take them out and show them the rig and tell them what we were doing and so forth in order that he might sell them acreage or an interest to raise money to drill the well deeper.

"Q. What type of labor did you perform as superintendent? A. Only supervision.

"Q. Did you do any manual labor in that area? A. Not to speak of.

\* \*· \* \* .\* \*

"Q. Was any drilling done by you or anyone else at that well on the well from April 1, 1947, to June 1, 1948? A. No.

\* \* \* \* \* \*

"Q. What did you do? A. I purchased equipment, moved it in, set it up, carried his guests around that he might sell them acreage, run errands for him; he was confined most of the time to the bed; I did all the running.

\* · \* \* \* \* \*

"Q. Now, let me get this straight, I will ask you this question. In addition to driving these people around, what actual work did you perform on the wellsite on the machinery from April 1, 1947, to June 1, 1948? A. We painted the rig a time or two and I had watchmen out there I would check up on and see nothing was missing and various other things; in other words, I was keeping constant watch on the rig; I cleaned it from time to time."

We do not believe LaMance performed services of a lienable nature. He did not labor or furnish materials, machinery, fixtures or tools to be used in the construction, alteration or repair of any building or other structure or improvement whatever. It is apparent from his own testimony that he did little, if any, labor on the well or drilling equipment after drilling operations ceased. His work consisted mostly of running around doing errands, conducting tours of the property for prospective investors and checking on the watchmen. We cannot hold that LaMance is entitled to laborer's lien by performing this type of work. There was no construction, alteration or repair of any structure. One is not entitled to a lien for what appears to be purely personal services, nor for purely professional services. Waara v. Golden Turkey Mining Co., 60 Ariz. 252, 135 P.2d 149, 149 A.L.R. 677. It is stated in 36 Am.Jur., Mechanics' Liens, Sec. 53, p. 49, that: " * * * One employed by the month to

do such work as his employer may require, and who, in pursuance of such employment, does work some of which is of a character for which a lien may be asserted and the balance of a different character, is not entitled to any lien." See Getty v. Ames, 30 Or. 573, 48 P. 355.

We hold that the trial court erred in affixing a lien on the Daisy Thayer lease and the drilling equipment located on the Fitzwater property a mile from the well-site.

█ LaMance, however, has established an employer-employee relationship between the Southern Arizona Oil Company and himself. The trial court found that La-Mance was employed by the Southern Arizona Oil Company during the period which LaMance was not paid for his services. This finding is supported by substantial evidence and will not be disturbed in this appeal. Although we hold that LaMance is not entitled to a lien because he did not perform services of a lienable nature, we do hold that the trial court was correct in entering a money judgment in his favor against the Southern Arizona Oil Company, on the contractual relationship of employer and employee.

Judgment reversed and remanded with directions to enter judgment in accordance with the views herein expressed.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concurring.